107 P.2d. 1050
**SHIPLEY v. SMITH et al.**
No. 4568.

Supreme Court of New Mexico.
Nov. 13, 1940.

Rehearing Denied Dec. 21, 1940.

Seth & Montgomery, of Santa Fe, and George Shipley, of Alamogordo, for appellant.

M. A. Threet, Dist. Atty., Third Judicial District, of Las Cruces, for appellees.

BICKLEY, Chief Justice.

This action was brought by appellant as a resident taxpayer of Otero County against appellees to enjoin payment of public monies of Otero County to R. L.

Harrison Co., Inc., under a contract alleged to be illegal as in violation of the provisions of Chap. 233, N.M.S.L.1939, governing purchases involving expenditure in excess of $500 and requiring that such purchases be made from the lowest responsible bidder after advertisement for bids.

The court found and concluded as follows:

"5. That the monies which came into the hands of the Board of County Commissioners of Otero County, who are defendants hereto, and out of which such Commissioners propose to pay the said R. L. Harrison Co., Inc., in the purchase of a certain road grader as disclosed by the evidence herein, are monies which came into the hands of the said Board of County Commissioners by way of donation, and they are not monies realized under any process of taxation or through any collections from the taxpayers of the State of New Mexico or of the County of Otero; that said monies so came into the hands of the said Board of County Commissioners by means of and through the process set up under an Act of the United States Congress of January 28th, 1934, known as the Taylor Grazing Act, the same being set out as Section 315i, 43 U.S.Code Annotated; and under Chapter 125 of the New Mexico Session Laws of 1939;

"6. That while the plaintiff is a taxpayer of Otero County, New Mexico, she, and those on whose behalf she brings this suit, have no taxpayer's interest in or to the said monies above referred to out of which it is proposed by the said Board of County Commissioners to pay for the road grader in question; and that said plaintiff, and those on whose behalf she has brought this action, have no personal right or interest in and to said monies; and that, consequently, said plaintiff, and those on whose behalf she has brought this action, are entitled to no relief whatever by way of injunction herein sought;

"7. That under the facts disclosed, the plaintiff has no cause of action whatever either against the defendants now before this Court, or against the said R. L. Harrison Co., Inc., whereby she is entitled to either temporary or permanent injunctive relief, such that it would be useless and unnecessary to now make the said R. L. Harrison Co., Inc., a defendant hereto, or to continue this case.

"8. That under all the facts and circumstances presented to the Court, and under the law in relation thereto, this action should be dismissed."

In Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573, while deciding that "a taxpayer's interest is not sufficient to invoke the aid of equity to enjoin state officers from making illegal expenditure of state funds", we said that the taxpayer may have injunction to prevent devastavit of municipal funds and that, "Such is said by Dillon to be the prevailing rule. He says it may be vindicated upon principle in view of the nature of the powers of municipal cor-

porations, and the analogy in the relations between such corporations and the taxpayers and private corporations and their stockholders. 'It is better,' he says, 'that those immediately affected by corporate abuses should be armed with the power to interfere directly in their own names than to compel them to [rely] upon the action of a distant state officer,' Municipal Corporations (5th Ed.) §§ 1579, 1580."

The trial court, in his opinion, concluded that because the monies belonging to Otero County were given to it by the state and were not raised by taxation of the property of the taxpayers of Otero County, that therefore as to the plaintiff taxpayer and other taxpayers similarly situated: "anything that may be done in connection with those funds, any actions contemplated, or done, in connection with those funds, are not actions in which a taxpayer has any interest, those funds not having been created through taxation, and that, therefore, the taxpayer has no interest therein, it being clearly the law, in the Court's opinion, that there is always combined with the proposition of the right of a taxpayer to sue for injunctive relief, that the taxpayer or the alleged taxpayer must show he is a taxpayer, and that its (his) interest as a taxpayer will be affected. Now that is not present in this case."

It appears from other expressions employed by the learned trial judge in his opinion that he was misled into believing that we had said in Asplund v. Hannett, supra, that the question turns upon whether the public fund was created through taxation. True, it was there hinted that the decision might be turned on that question. We said: "As already pointed out, it is not satisfactorily shown that appellant will be in any way injuriously affected in his property by the proposed expenditures. Perhaps his failure to show such injury should be deemed decisive. We prefer, however, to assume, for the purposes of this case, that the necessary result of the proposed use of the 'permanent reservoirs for irrigating purposes, income fund,' will result in increasing state taxes."

So, it appears we did not decide in that case that the suing taxpayers were not injuriously affected because the fund in question said to be threatened with a misuse was derived through sources other than taxation.

Appellant, in her brief in chief, vigorously challenged the production of decisions in support of appellee's position that the taxpayer has no interest in protecting the public funds of a municipality from devastavit unless such funds were derived solely from taxation. Appellee has cited none. Counsel for appellant persuasively argues: "From all this it appears that where the governing board of a county or other municipality is, as in this case, about to disburse funds in the treasury of the county or municipality, in violation of law, a resident taxpayer may maintain an action to enjoin such illegal expenditure, without alleging or proving further in-

terest. As we pointed out in our brief in chief and in Asplund v. Hannett, supra, this right of the taxpayer grows out of the analogy between the relation of the stockholder to the private corporation. When a sum of money passes into the treasury of a private corporation and becomes the property of the corporation, the interest. of each individual stockholder of the corporation attaches immediately, regardless of whether the fund originated in a gift, or in profit made from the business of the corporation, or in capital contributions from the stockholders. The directors of the private corporation have no more right to waste money which originated by gift to the corporation than to waste money which the stockholders have paid in by way of subscription for shares of stock. The only material fact is that the funds are part of the funds of the corporation. Following this analogy, the governing board of a county or other municipality has no more right to waste a gift of money than to waste money received through taxation; and when the money which originated in a gift becomes part of the public funds of the county, the resident taxpayers' interest therein immediately attaches and their right immediately rises, to prevent waste of such funds, through injunction."

We find this argument to be supported by the decision of the Supreme Court of Wisconsin in Re Cole's Estate, 102 Wis. 1, 78 N.W. 402, 72 Am.St.Rep. 854. We find it. convenient to employ the appraisal of that decision by Mr. Justice Winslow in Linden Land Co. v. Milwaukee El. R. & L. Co., 107 Wis. 493, 83 N.W. 851, 854. "Here the basis of the right is not that there is necessarily a personal and direct pecuniary loss to the taxpayer, but that the public moneys, rights, or property are about to be squandered or surrendered, and that such moneys, rights, or property belong to the body of taxpayers, and are simply held in trust by the unfaithful public officers. This is well illustrated in the case of [In re] Cole's Estate, just cited, where real and personal property was willed in remainder to a city in trust for the establishment of a public library and a home for the aged poor, and a controversy arose between the executors. and the city, in the county court, as to whether certain expenditures upon the property should be charged against the life tenant of the property, or against the corpus of the estate. The county court decided against the city, and, the city officials declining to appeal, a taxpayer intervened and took the appeal to the circuit court; and his right to do so was sustained by this court. Here no taxpayer could be said, in strictness, to have suffered a direct or pecuniary injury by the decision of the county court, or the failure to appeal therefrom; but the illegal diminution of the trust property was a distinct invasion of the property of the corporation, in which each individual taxpayer or member of the corporation had a substantial interest, notwithstanding the property could only be used for the purposes of the trust, and its entire loss would not necessarily result in increased taxation. So under-

stood, the case is in entire harmony with the general principles laid down in the other cases in this court."

Mr. Justice Winslow thought this principle similar to that which declares that money or property of the public corporation squandered or about to be squandered is the property of the taxpayers and hence every taxpayer has a substantial interest in it which he is entitled to have protected. However, the chief value of the Wisconsin decision is in its application to facts similar to those in the case at bar of the principles and analogy employed by us in Asplund v. Hannett quoted supra. In the Wisconsin case, the court said: "The fact that the threatened injury or the wrong done is to the corporation, and that its governing body or officers, who should move in the matter, neglect or refuse to do so, creates a necessity for some other way to remedy the mischief, and in that situation the circumstance of a person being a taxpayer and interested in the protection of its rights, is a sufficient test of his competency to challenge the threatened wrong, or wrong actually done, in a court of justice. That jurisdiction of the court is the most powerful and effective force to prevent and redress wrongs to public corporations when their officers squander public money, or improperly surrender or violate public rights, either corruptly or ignorantly. There is no other way to successfully and efficiently meet that situation. In such cases, where officers neglect to do their duty, the wrong need not by any means go unredressed, so long as there is a single taxpayer with courage and public spirit enough to set the judicial machinery in motion. He may stand in court in place of the unfaithful public officials. The court, in him, will recognize the interests of the corporation as a whole, and with the evidence produced before it, calling for action, by its decree, compel the performance of duty by all within its reach." In re Cole's Estate, 102 Wis. 1, 78 N.W. 402, 404, 72 Am.St.Rep. 854. See also 20 C.J.S., Counties, § 286.

The absence of a showing of demand by the plaintiff upon the officers of the municipal corporation (Otero County) to protect its rights cannot alter the case because the circumstances are such as obviously to render such demand useless. See In re Cole's Estate, supra.

A note to Sec. 2751, McQuillan Municipal Corporations, 2d Ed., is as follows: "May compel municipality to advertise for bids where the statute requires the contract to be let to the lowest bidder. Santa Rosa Lighting Co. v. Woodward, 119 Cal. 30, 50 P. 1025, holding that it is not essential to show actual pecuniary damages where the object is to compel compliance with a statute, since it 'should be presumed that where the law enjoins a duty upon a municipal body, and specifically points out the mode of its performance, that a violation of that duty and a disregard of the mode of its performance will work injury.'"

From all the foregoing, it appears that the trial court was in error in dismissing the cause.

The judgment is reversed with directions that the cause be reinstated and that the court proceed therewith, and it is so ordered.

BRICE, SADLER, ZINN, and MABRY, JJ., concur.

On Motion for Rehearing.

BICKLEY, Chief Justice.

It is asserted in the motion for rehearing that the holding of the Wisconsin Supreme Court, In re Cole's Estate, cited in our opinion as a supporting authority, was rejected in the case of Dickey v. Volker, 321 Mo. 235, 11 S.W.2d 278, 62 A.L.R. 858. Even if counsel's appraisal is correct, which we doubt, we are not moved by it. Furthermore, the Missouri Supreme Court eight years later had this to say in State v. Sevier, 1936, 339 Mo. 483, 98 S.W.2d 677, 678:

"The State Purchasing Agent owed a duty to the public to honestly and fairly exercise his discretion to award the contract in question to the lowest and best bidder. If he failed to lawfully perform that duty, his action in the matter could be reached and controlled by mandamus. Private citizens as well as taxpayers or proper public officials may maintain mandamus to enforce the performance of a public duty. The rule of law governing such suits when brought by private citizens is well stated in State ex rel. Black & Gilmore v. Wilson, 158 Mo.App. 105, 120, 121, 139 S.W. 705, 709, as follows:

"'Where a public duty is sought to be enforced in which the public generally is interested by private citizens on behalf of the public as well as on their own, they may move for a writ of mandamus, and are not required to plead or prove any special or particular interest in the result of the performance of the general public duty because the people are regarded as the real, moving party.'"

See also Ward v. City of Roswell, 34 N.M. 326, 281 P. 28, where we said: "The right of a taxpayer to sue to enjoin threatened devastavit of municipal funds or property is well established in this state. Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573. Such right would disappear if it must yield to objections such as one and two. It is argued by appellants that, if the action taken by the council is void, it leaves city officials still liable for water used, leaves the city free to enforce the liability, and leaves appellee free to compel such enforcement by mandamus. Taxpayers' suits are exceptional. The remedy suggested does not preclude injunction. *Nor need the taxpayers, in such suits, show greater or more irreparable injury than the public loss in which he shares.*" (Emphasis supplied.)

The motion for rehearing is denied.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.