ALTON W. KORNEGAY, JAMES L. STOUGH, AND DAVID M. CRENSHAW, AS TAXPAYERS, CITIZENS AND VOTERS IN AND OF THE CITY OF RALEIGH, NORTH CAROLINA, ON BEHALF OF THEMSELVES AND ALL OTHER TAXPAYERS, CITIZENS AND VOTERS OF SAID CITY WHO MAY DESIRE TO JOIN IN THIS ACTION, PLAINTIFFS, v. THE CITY OF RALEIGH, A MUNICIPAL CORPORATION, AND SOUTHEASTERN CABLEVISION COMPANY, A NORTH CAROLINA CORPORATION, DEFENDANTS.

(Filed 20 January, 1967.)

**1. Injunctions § 8—**

Citizens and taxpayers of a municipality may maintain an action to enjoin the performance of an agreement entered into by the city and a cablevision company authorizing the cablevision company to install and maintain equipment for cablevision within the municipality upon the assertion that the agreement was void because no election was held as required by the municipality's charter, when they allege facts disclosing the possibility of financial loss to themselves as taxpayers for which they would have no adequate remedy at law. Plaintiffs may not maintain the action in their capacity as electors, since if an election were prerequisite to the agreement, the agreement is void and they would not be injured by the denial of the right to vote.

**2. Municipal Corporations § 18—**

Whether an agreement by a municipality constitutes a franchise or a license depends upon the nature of the rights granted and not the nomenclature employed by the parties.

**3. Same—**

G.S. 160-2, as distinguished from its charter, empowers a municipality to grant a franchise only to a public utility, though it is not required that the grantee be a public utility within the definition set forth in G.S. 62-3.

**4. Same—**

The grant by a city to a person, firm or corporation of the right to construct cablevision facilities within the city along and over its streets and public ways is the grant of a right not held by all persons in common and which may be granted by the city only in the exercise of power delegated to it by the sovereign, and therefore such grant is a franchise notwithstanding that the ordinance under which the agreement was made provides that any person, firm or corporation might apply for such right, the city having the right to deny other applications, for any "good cause".

**5. Same—**

Where a municipal charter prescribes procedure to be followed by the municipality in granting a franchise, including the requirement that the question be submitted to a vote of its citizens, a franchise granted without following the statutory procedure is void.

APPEAL by plaintiffs from *Cowper, J.*, at the September 1966 Assigned, Non-Jury, Civil Session of WAKE.

The plaintiffs, citizens, residents, taxpayers and registered voters of the city of Raleigh, sue to enjoin the defendants from entering

into the performance of and from carrying out any of the obligations or actions required or permitted under a certain "license, special privilege and franchise" granted by the city to Southeastern Cablevision Company, hereinafter called Southeastern, pursuant to the city's Ordinance No. (1964) — 256, as amended, and for a judgment declaring such ordinance and the "license, special privilege and franchise" void.

Upon the ground that the complaint does not state facts sufficient to constitute a cause of action, in that plaintiffs do not allege facts showing that they have sustained or will sustain any personal injury or loss by reason of the matters complained of, and further do not allege facts entitling them to any injunctive relief, the superior court sustained demurrers filed by the respective defendants to the complaint.

The complaint alleges that the plaintiffs, suing for themselves and all other persons similarly situated, will be irreparably damaged if the defendants are permitted to carry out such grant in that they, and all other registered voters of the city of Raleigh, will have been deprived of their respective rights to vote "on the grant of such license, right and franchise" to Southeastern. They also allege that they will suffer irreparable damage in their capacities as taxpayers of the city if the city is permitted, pursuant to such ordinance and grant, to relinquish to Southeastern an "interest in the streets, alleys and public ways" of the city without complying with the requirements of the law applicable to such matters. They allege that for these injuries they have no adequate remedy at law.

Attached to the complaint, and incorporated therein by reference, are a copy of the ordinance, as amended, a copy of a resolution of the City Council, and a copy of § 18 of the charter of the city, each of which documents is summarized below.

The complaint alleges that the grant of which the plaintiffs complain was made without submitting to a vote of the qualified voters of the city the question of whether such grant should be made, and without the enactment, as required by the charter of the city, of an ordinance relating to such grant. It is also alleged that, at the time of the grant, Southeastern had not acquired a certificate of public convenience and necessity from the North Carolina Utilities Commission. The ordinance and the grant are alleged to be null and void because: (1) They violate §§ 14 and 18 of the city charter, referred to below; (2) the grant is an attempted grant of an exclusive or separate emolument in violation of Article I, § 7, of the Constitution of North Carolina; (3) the ordinance and grant are an attempt by the city to regulate community antenna television systems beyond the authority of the city; (4) the city has no authority to permit the

use of its streets for community antenna television purposes; (5) Southeastern did not, at the time of the grant, have a certificate of public convenience and necessity issued by the North Carolina Utilities Commission.

The pertinent provision of § 14 of the city charter is that, "No ordinance making a grant * * * of any franchise or special privilege, shall be passed until voted on at (2) regular meetings of the City Council, and no such grant * * * shall be made otherwise than by ordinance."

The applicable provisions of § 18 of the city charter are:

> "No franchise shall be granted by the City of Raleigh until the question has been submitted at a special or general election, to the qualified voters of the city and until a majority of those voting upon the proposition have voted in favor of granting such franchise; * * * and before any such grant of any such franchise or right shall be made, the proposed specific grant shall be embodied in the form of an ordinance, with all the terms and conditions that may be right and proper, including a provision for fixing a rate, fares and charges to be made if the grant provide for the charging of a rate, fares, and charges; * * *"

The pertinent portion of the resolution adopted by the City Council is:

> "That SOUTHEASTERN CABLEVISION COMPANY be and is hereby granted a license to construct and operate a community antenna television system within the City of Raleigh under the terms and conditions set out in City Ordinance No. (1964) — 256, adopted August 3, 1964, as the same may be from time to time amended."

The pertinent provisions of the ordinance are:

> "SECTION 1. That a person, firm or corporation may install and operate a Community Antenna Television System in the City of Raleigh under the conditions set out herein and for that purpose is granted:
>
> "(a) The right and the privilege for a period of fifteen (15) years from the effective date of a license issued pursuant to this ordinance to erect structures in the City of Raleigh and to construct, maintain and operate in, over, and along present and future streets, alleys and public places of the City of Raleigh, towers, poles, lines, cables, necessary wiring and other apparatus for the purpose of receiving, amplifying and distributing

television, electronic, electrical and radio signals, audio and video, to said City and the inhabitants thereof.

\*          \*          \*

"SECTION 2. The grant herein contained shall be subject to  the following conditions:

\*          \*          \*

"(c)  The privileges and rights herein granted by this ordinance shall not be exclusive.

\*          \*          \*

"(j)  That if any streets and sidewalks should be disturbed or damaged in the construction or maintenance of said cable lines and other appurtenances, the same shall be promptly repaired by the grantee at its expense and to the satisfaction of the City of Raleigh.

\*          \*          \*

"(p)  Upon the termination of this special privilege, the grantee shall remove its poles, television transmission and distribution system and other appurtenances from the streets and sidewalks in the City of Raleigh and shall restore such streets and sidewalks to their original condition.

\*          \*          \*

"(u)  Except for a mortgage or assignment to secure a loan or loans to construct and operate said system, grantee shall not sell or transfer its system and the privilege granted herein without first securing approval of the City Council for such sale or transfer.

"(v)  In the event any section or part of this ordinance shall be held invalid, such invalidity shall not affect the remaining sections or portions of this ordinance.

"(w)  The grantee shall be subject to such taxes as are now or as may be hereafter levied by the City of Raleigh, including, but not limited to, a special privilege tax in such amount as may be determined by the City Council for the use of the public streets  \*  \*  \*

\*          \*          \*

"SECTION 3. An applicant desiring to install and operate a Community Cable Television System in the City of Raleigh shall file an application with the City Council  \*  \*  \*

"If the City Council should be of the opinion that the application of the applicant is not bona fide; that its financial responsibility is insufficient to secure the performance of the obligations of installing and operating successfully a Community Cable Television System within the City; or for other good

cause that the license should not be issued, it may thereupon deny the application.

"SECTION 4. This ordinance may be amended by the City Council as may be deemed necessary or advisable in the public interest after first giving thirty (30) days' notice to all holders of licenses issued pursuant hereto."

Other provisions of the ordinance deal at length with the regulation of the location of poles and other facilities, the use of poles of other companies with their permission, the quality and extent of the service to be rendered, the rates to be charged subscribers, discrimination between subscribers, revocation for default by the grantee, and various other duties of the grantee and powers of the city.

*Johnson, Gamble & Fogel for plaintiff appellants.*
*Smith, Leach, Anderson & Dorsett for defendant Southeastern Cablevision Company.*
*Donald L. Smith for defendant City of Raleigh.*

LAKE, J. In the appellees' brief the proposed operation by Southeastern is described as follows:

"[I]t must be noted that CATV system does not obstruct or in any manner actually interfere with the use of the street by the public or with an adjoining property owner. The receiving tower and antenna are located on the CATV Company's private property, with the co-axial cables which extend ABOVE the city streets being strung upon the existing pole system of the telephone and power companies. THUS THE CATV CABLES OCCUPY A MINIMAL AMOUNT OF AIR SPACE ABOVE THE CITY STREETS AND WILL IN MOST INSTANCES BE LOCATED BETWEEN EXISTING WIRES OF THE UTILITY COMPANIES. It cannot be said that there is any unreasonable encroachment on the city streets and in fact there is no encroachment at all."

The nature and validity of the grant to Southeastern, and the right of these plaintiffs to attack it in this litigation, must, however, be determined by what the grant authorizes the grantee to do, not by what it presently intends to do or by what operators of such businesses usually do.

The grant in this instance does not restrict Southeastern to the stringing of cables upon existing poles of other companies. It is empowered to construct and operate, in and along all public ways of the city, its own towers, poles, lines and cables, together with all

other necessary apparatus for amplifying and distributing audio and video signals. Thus, the nature and validity of the grant are the same as if there were no other poles and cables now in, over and along the streets and other public ways of the city.

The plaintiffs' right to maintain this action cannot be sustained on their contention that they have been deprived of their right to vote. They do not, of course, contend that they have been denied the right to vote in an election in which others have voted. Their contention is that they have been damaged irreparably because no election has been held. If, as they contend, an election is essential to the validity of a grant by the city of the right purported to be granted to Southeastern, then the alleged grant is not valid, for the demurrer admits no election has been held. In that event, the plaintiffs are in the same position they would occupy if an election had been held and the majority of votes had been cast in opposition to the grant. Thus, the plaintiffs have not been injured in any way by the failure to hold the election. Their status as registered voters of the city does not, therefore, entitle them to maintain this action.

The plaintiffs, as taxpayers, stand in a better position. When we consider that this grant purports to give to Southeastern the right to erect a city-wide system of poles, towers, cables and wires along all the streets of the city, notwithstanding Southeastern's apparent intent to engage in a much less extensive program of construction, it becomes apparent that the construction which this grant purports to authorize may bring about extensive damage to and disturbance of pavements and other street and sidewalk surfaces. Such damage, if it occurs, will have to be repaired at substantial expense. The grant also contemplates that the operation of the proposed business may subject the city to liability to third persons. Part or all of these expenses and liabilities may fall upon the taxpayers of the city, notwithstanding provisions in the ordinance requiring Southeastern to bear them and the agreement by Southeastern to indemnify the city against such losses. This is sufficient to give the plaintiffs, as taxpayers, the right to institute and maintain this action to determine the validity of the grant and to enjoin the exercise of rights thereunder if it be unlawful. *Shaw v. Asheville,* 269 N.C. 90, ... S.E. 2d ......, decided today, and cases therein cited.

The decision in *Angell v. Raleigh,* 267 N.C. 387, 148 S.E. 2d 233, does not bar these plaintiffs from maintaining this action. There, the city had made no grant to anyone under the ordinance. Here, it has and the activity authorized by the grant will be carried on unless the defendants are enjoined from doing so. The plaintiffs have

no adequate remedy at law. It thus becomes necessary in this action to determine whether the proposed activity would be unlawful.

Here, as in *Shaw v. Asheville, supra,* it is not necessary for us to determine, and we do not determine, whether Southeastern, if it carries on a business of the type authorized by this grant, would be subject to regulation by the North Carolina Utilities Commission under the provisions of Chapter 62 of the General Statutes.

The determination of this appeal turns upon whether the rights purported to be granted by the city to Southeastern by the resolution of the City Council constitute a franchise, as that term is used in § 18 of the charter of the city of Raleigh. If so, the demurrer to the complaint should have been overruled, for the complaint alleges and the demurrer admits that the question of whether a franchise for such operation shall be granted has not been submitted to the qualified voters of the city.

Whether a grant of rights by a municipal corporation is the grant of a franchise does not depend upon the status of the grantee but upon the nature of the rights granted. *Shaw v. Asheville, supra.* The status of the grantee is a material factor in determining the validity of a grant of a franchise under the authority of G.S. 160-2, for that statute authorizes municipal corporations to grant franchises only to "public utilities," though it does not necessarily follow that such grantee must be the operator of a business within the definition of "public utility" contained in G.S. 62-3. *Shaw v. Asheville, supra.* Here, the city charter, by implication, authorizes the granting of franchises without limitation as to the status of the grantee.

The grant by a city to a person, firm or corporation of the right to construct a city-wide system of towers, poles, cables, wires, and other apparatus in, along and over its streets and other public ways and to operate such systems for the profit of the grantee is clearly a franchise, for it is the grant of a right not held by all persons in common and which may be granted only by the act of the sovereign or its authorized agent. *Shaw v. Asheville, supra,* and authorities there cited. A franchise need not be exclusive. Indeed, if it is exclusive, an additional question as to its validity arises under the Constitution of North Carolina, Article I, §§ 7 and 31, a question which we do not now need to determine and do not determine.

Though the ordinance of the city of Raleigh expressly provides that the rights purported to be granted to Southeastern "shall not be exclusive," they are, nevertheless, not rights which all members of the public are free to exercise. The ordinance provides that no person may exercise such right within the city without an applica-

tion to and a grant by the City Council, which grant the Council may withhold for any "good cause."

We conclude that the rights which the city attempted to grant to Southeastern constitute a franchise, notwithstanding the fact that the ordinance denominates them a "license." The grant is, therefore, void because the procedure required by § 18 of the city charter for the granting of a franchise has not been followed.

We are not to be understood as holding that the city of Raleigh cannot grant such a franchise to Southeastern, or others properly qualified. Likewise, it is not necessary for us now to determine, and we do not now determine, the authority of the city to impose upon the grantee of such franchise any duty or restriction set forth in any provision of its Ordinance No. (1964) — 256. We hold that the city has undertaken to grant a franchise and, in doing so, has not followed the procedure required by the Legislature in the city charter. If this procedure be deemed by the city unduly burdensome and restrictive, the remedy must be sought from the Legislature.

The plaintiff taxpayers, having no adequate remedy at law for the proposed unauthorized and, therefore, unlawful use of the city streets, are entitled to maintain this action for the equitable relief of an injunction to restrain such activity. The demurrer was, therefore, improperly sustained.

Reversed.