GEORGE KLOSTER v. REGION D COUNCIL OF GOVERNMENTS

No. 7724SC810

(Filed 6 June 1978)

1. Injunctions § 11.1— regional council of governments—illegal activity—standing of taxpayer to challenge

   A taxpayer and resident of an area encompassed by a regional council of governments does have standing to contest allegedly illegal activities of the council where such activities are funded by tax monies or property derived from local or federal sources, or where such activities may later require support by tax monies.

2. Municipal Corporations § 4— regional council of governments—no authority to own land or construct buildings

   Defendant council of governments was without authority to own land or construct a building for any purpose, since G.S. 160A-475, § (1) through § (7), the statutes spelling out powers of councils of governments, did not name land ownership as one of those powers, and since the member governments of defendant council did not authorize defendant to own land or construct a building.

APPEAL by plaintiff from *Howell, Judge.* Judgments entered 13 May 1977, and 28 May 1977, in Superior Court, WATAUGA County. Heard in the Court of Appeals 29 March 1978.

This action was instituted by plaintiff, as citizen, resident, and taxpayer of the town of Boone, Watauga County, North Carolina, for a declaratory judgment that defendant Council of Governments does not have legal authority to hold title to real estate in its own name, to construct an office building for its own use and for rental purposes, or to lease office space in competition with free enterprise. Plaintiff also sought a temporary restraining

order to restrain defendant from commencing or continuing construction of the office complex.

Region D Council of Governments was established pursuant to G.S. 160A-470, *et seq.* and covers Watauga County and six other counties and the town of Boone as well as fourteen other towns. On or about 29 October 1976, the defendant, through its Executive Director James E. Brannigan, applied to the Economic Development Administration (EDA) of the United States Department of Commerce for a grant of $1,230,651 for the construction of a general use office complex in Boone. On 21 January 1977, representatives of EDA and of defendant signed the offer of grant from EDA to defendant for the amount requested. By deed dated 12 March 1977, defendant received a 1.674 acre tract of land in Boone from Joe Williams and wife, and, on 16 March 1977, defendant obtained from the Boone Board of Adjustment a variance in the "M-1 district" zoning which prohibits the construction of an office building on the property deeded by Williams and wife.

According to plaintiff's complaint, the minutes of the 15 November 1976 meeting of the Executive Board of defendant stated, in part, that "an employees' corporation would be formed. This corporation would be non-profit and would be formed to manage and maintain the facilities. Any profit to this corporation would be in the form of fringe benefits in a retirement fund for the employees." Plaintiff alleged upon information and belief that approximately 28,000 square feet of the 40,000 square foot building would be rented to outside individuals for profit "in competition with other office buildings" in Boone. Plaintiff contested defendant's legal authority to hold title to and own real estate and to construct on such property a general use office building for its own use and for profit and alleged that such activities violated Article VII of the Constitution of North Carolina and G.S. 160A-475.

After plaintiff's prayer for a temporary restraining order was denied, defendant answered plaintiff's complaint, alleging, among other things, that plaintiff had failed to state facts sufficient to give him legal right to file this action and that the complaint failed to state a claim on which relief could be granted. Defendant also moved for summary judgment. In response, plaintiff moved to amend his complaint and to delay hearing on the

summary judgment motion until after discovery had been conducted. The motion to amend was denied, and a hearing was held on the summary judgment motion. On 28 May 1977, the trial court, finding no genuine issue of material fact, ruled that the defendant was entitled to judgment as a matter of law. Plaintiff appeals.

*Charles E. Clement and Paul E. Miller, Jr., for plaintiff appellant.*

*James E. Holshouser, Jr., for defendant appellee.*

ARNOLD, Judge.

Plaintiff's sole question on this appeal is whether the defendant, Region D Council of Governments, has the power to hold title to real estate and to construct on real estate an office building for its own use and for rental purposes in competition with private enterprise. Before addressing that question, it must first be determined whether plaintiff, as citizen, resident and taxpayer, has the standing to contest the actions of the regional council of governments.

In *Shaw v. Asheville*, 269 N.C. 90, 152 S.E. 2d 139 (1967), a taxpayer suit to enjoin the performance of a cablevision contract, the court found standing. The court quoted from *Wishart v. Lumberton*, 254 N.C. 94, 96, 118 S.E. 2d 35, 36 (1961), that " '[i]f the governing authorities were preparing to put public property to an unauthorized use, citizens and taxpayers had the right to seek equitable relief.' " 269 N.C. at 95, 152 S.E. 2d at 143. The *Shaw* court also quoted from *Merrimon v. Paving Company*, 142 N.C. 539, 545, 55 S.E. 366, 367 (1906):

> " 'That a citizen, in his own behalf and that of all other taxpayers, may maintain a suit in the nature of a bill in equity to enjoin the governing body of a municipal corporation from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers—such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, *etc.*,—is well settled.' " 269 N.C. at 95, 152 S.E. 2d at 143.

*See also Kornegay v. Raleigh*, 269 N.C. 155, 152 S.E. 2d 186 (1967), where the Supreme Court allowed a suit by citizens and tax-payers to enjoin defendants from performing obligations under a cablevision license granted by the city to Southeastern Cablevision Company. The Court noted that the construction which the grant purported to authorize

> "May bring about extensive damage to and disturbance of pavements and other street and sidewalk surfaces. Such damage, if it occurs, will have to be repaired at substantial expense. The grant also contemplates that the operation of the proposed business may subject the city to liability to third persons. Part or all of these expenses and liabilities may fall upon the taxpayers of the city, notwithstanding provisions in the ordinance requiring Southeastern to hear them and the agreement by Southeastern to indemnify the city against such losses." *Id.* at 160, 152 S.E. 2d at 189-90.

On the other hand, courts must be cognizant of the "gist of the question of standing." In *Stanley, Edwards, Henderson v. Dept. of Conservation and Development*, 284 N.C. 15, 199 S.E. 2d 641 (1973), taxpayers were found to have standing to challenge the constitutionality of the North Carolina Pollution Abatement and Industrial Facilities Financing Act, G.S. 159A-1, *et seq.* In analyzing the question of standing, Justice Sharp, now Chief Justice, stated:

> "Under our decisions '[o]nly those persons may call into question the validity of a statute who have been injuriously affected thereby in their persons, property or constitutional rights.' [Citations omitted.] The rationale of this rule is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. 'The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of difficult constitutional questions." ' *Flast v. Cohen*, 392 U.S. 83, 99, 20 L.Ed. 2d 947, 961, 88 S.Ct. 1942, 1952 (1968)." 284 N.C. at 28, 199 S.E. 2d at 650.

In *Stanley*, taxpayers of Northampton, Halifax and Jones counties sought judicial review of resolutions of the North Carolina Board

of Conservation and Development (1) determining that the creation of the Pollution Abatement and Industrial Facilities Financing Authority of each of three counties was for a public purpose and (2) approving bond issues by the Halifax and Northampton Authorities for pollution abatement facilities and by the Jones Authority for an industrial facility project. The authorities had not spent, and had not contemplated spending, any funds derived from taxation. At the time of the lawsuit they had issued no bonds. However, the authorities were created solely for the purpose of issuing tax exempt revenue bonds to finance projects specified by the Act and were prepared to issue them immediately upon "successful resolution" of the constitutional questions concerning their power to issue such bonds. The Court noted the general rule regarding standing:

> " 'A taxpayer injuriously affected by a statute may generally attack its validity. Thus, he may attack a statute which . . . exempts persons or property from taxation, or imposes on him in its enforcement an additional financial burden, however slight.' " 284 N.C. at 29, 199 S.E. 2d at 651, quoting 16 C.J.S. *Constitutional Law* § 80, at 247-48 (1956).

In the case *sub judice*, there are two problems which complicate analysis of the question of plaintiff's standing. First, as averred by defendant, the money by which the office complex is to be built, is money received as a grant from the federal government, and not revenues from local tax coffers. Defendant argues and cites cases to the effect that taxpayers may not sue to enjoin activities which are wholly financed by non-tax or donative monies. *See, e.g. Andrews v. City of South Haven*, 187 Mich. 294, 153 N.W. 827 (1915). The theory underlying such decisions is that a taxpayer, such as plaintiff, can show no injury by projects requiring no expenditures of tax money. There have, however, been decisions to the contrary. In *Shipley v. Smith*, 45 N.M. 23, 107 P. 2d 1050 (1940), the New Mexico court held that a taxpayer had sufficient interest to allow him to sue to restrain a payment of public monies although such monies were received as a donation rather than as taxation. in *Shipley* the court agreed with the appellant's argument that the right of the taxpayer is analogous to a stockholder of a private corporation, and the directors of the private corporation have no more right to waste money which originated by gift to the corporation than to waste money which

the stockholders have paid in by way of subscription for shares of stock. See 131 ALR 1230. We are persuaded that the *Shipley* court expressed the more logical view, and more especially since the "donative funds" in the case at bar are a grant originating from the U.S. Department of Commerce, Economic Development Administration, which we perceive to be derived from the taxpaying public.

The second problem which makes this analysis more complicated is that defendant council of governments is not a taxing authority and, thus, defendant argues, should not be treated as the municipalities in the *Kornegay* and *Shaw* cases, *supra.* We do not agree with defendant's argument. Regional councils of governments are created by act of two or more units of local government which adopt identical concurrent resolutions referred to as charters. G.S. 160A-470. While the purpose of regional councils of governments is not clearly stated by the enabling legislation, G.S. 160A-470 *et seq.*, the purpose may be gleaned from a reading of the specific powers which may be conferred upon a council of governments by its charter:

"The charter may confer on the regional council any of the following powers:

(1) To apply for, accept, receive, and dispense funds and grants made available to it by the State of North Carolina or any agency thereof, the United States of America or any agency thereof, any unit of local government (whether or not a member of the council), and any private or civic agency;

(2) To employ personnel;

(3) To contract with consultants;

(4) To contract with the State of North Carolina, any other state, the United States of America, or any agency thereof, for services;

(5) To study regional governmental problems, including matters affecting health, safety, welfare, education, recreation, economic conditions, regional planning, and regional development;

(6) To promote cooperative arrangements and coordinated action among its member governments;

(7) To make recommendations for review and action to its member governments and other public agencies which perform functions within the region in which its member governments are located;

(8) Any other powers that are exercised or capable of exercise by its member governments and desirable for dealing with problems of mutual concern to the extent such powers are specifically delegated to it from time to time by resolution of the governing board of each of its member governments which are affected thereby." G.S. 160A-475.

[1]  Briefly stated, therefore, the purpose of councils of governments is to coordinate governmental functions best undertaken on a regional level. We do not believe that the General Assembly, in establishing the framework for such councils, intended that it would be a means by which local governmental functions would be isolated from local taxpayer suits designed to contest the legality of council action. Therefore, we hold that a taxpayer and resident of an area encompassed by a regional council of governments does have standing to contest allegedly illegal activities of the council where such activities are funded by tax monies or property derived from local or federal sources, or where such activities may later require support by tax monies. We think this holding is consistent with the *Shaw* and *Kornegay* cases, *supra*, as well as with *Stanley, supra*. Our fact situation is distinguishable from that in *Carringer v. Alverson,* 254 N.C. 204, 118 S.E. 2d 408 (1961), where the court nonsuited a taxpayer's action to have declared unconstitutional an act of the General Assembly and to have defendants adjudged as unlawfully holding public office. In that case, the plaintiff did not allege that public money had been or was to be expended, that taxes had been or were to be levied, that his rights had been or were to be invaded. In the present case, and with the liberality of pleadings under *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970), plaintiff has alleged that he is a taxpayer, that federal monies are to be used for the construction of an office complex, and that that office complex is to be built on land already held by the council of governments. Furthermore, it can be inferred from plaintiff's complaint that local taxpayers' monies will be necessary for future upkeep

of the building. Plaintiff, therefore, has standing to contest the legality of defendant's activities.

[2]   It is defendant's position that a regional council of governments has the implied power to own property and to construct a building. G.S. 160A-476 authorizes member governments to provide office space for a council. Thus, defendant reasons, if a council may occupy space provided by a member government, at local government expense, it has the right to own and occupy a building constructed by funds from a federal grant. This position cannot be sustained.

Regional councils of government are created when units of local government, *i.e.*, cities and counties, adopt concurrent resolutions. G.S. 160A-470. Once created, however, the council does not become a municipality, or a political or governmental subdivision of the state in the same sense as a city, town or county. A council may take on some of the attributes and functions of a political subdivision, but it does not possess the powers which municipalities are said to possess. [See, *Greene v. City of Winston-Salem*, 287 N.C. 66, 72, 213 S.E. 2d 231, 235 (1975), for a definition of those powers.]

By the terms of its charter a council may possess certain powers which are expressly spelled out in G.S. 160A-475, sections (1) through (7). In addition, councils are expressly given "[a]ny other powers that are exercised or capable of exercise by its member governments . . . ." These "other powers" expressly given apply only "to the extent such powers are specifically delegated from time to time by resolution of the governing boards of each of its member governments which are affected thereby." G.S. 160A-475(8). Therefore, except for the powers conferred by its charter, a council may neither possess nor exercise any powers which are not specifically delegated by each of its member governments.

The legislature has fixed the powers of regional councils of government, and a council may not exercise powers which have not been conferred upon it. The intention of the legislature, by the adoption of G.S. 160A-475(8), is that any powers not conferred on a council by its charter be possessed and exercised only upon the express authorization of each of the member governments. In the instant case defendant is without authority to own land or

construct a building for any purpose unless specifically authorized to do so by its member governments. Those rights might belong to the member governments, but, by statute, they may only belong to defendant when its member governments specifically delegate them.

The record contains the following stipulation:

"[F]rom the time of the amendment to G.S. 160A-475(8) to the time of the filing of the Complaint no governing board of the individual governments of Region D Council of Governments have adopted a specific resolution authorizing Region D Council of Governments to hold title to and own real estate, nor to construct on real estate an office building for its own use or for rental purposes."

Plaintiff's only contention in this appeal is that judgment be reversed because the defendant is without authority to own real estate or to construct an office building for its own use or for rental purposes since each of the member governments involved has not specifically authorized these powers. Application for the grant from the Economic Development Administration was made on or about 29 October 1976. In 1975 G.S. 160A-475(8) was amended and the language "to the extent such powers are specifically delegated" was added. Thus, in view of the parties' stipulation, plaintiff's position is correct.

The Superior Court of Watauga County is directed to enter judgment in accordance with this opinion. The judgment appealed from is

Reversed.

Judges MORRIS and MARTIN concur.