**Lawrence S. RATLIFF on his own behalf and on behalf of all of the taxpayers of Anson County, North Carolina, Plaintiff,**

v.

**Fred A. BURNEY; Floyd Deen, Jr.; Gultekin Ertugrul and Abdul Niazi-Sai, Defendants.**

**No. C–C–79–304.**

United States District Court, W. D. North Carolina, Charlotte Division.

Jan. 7, 1981.

George M. Chapman, Wadesboro, N. C., for plaintiff.

Richard E. Thigpen, Jr., Charlotte, N. C.; J. H. Rennick, Salisbury, N. C.; Alfred S. Bryant, Charlotte, N. C., for defendants.

## FINAL ORDER

McMILLAN, District Judge.

Plaintiff Lawrence S. Ratliff is an Anson County, North Carolina, taxpayer. He filed this suit as a class action for himself and all other Anson County taxpayers, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and N.C.G.S. Chapter 75–1. Defendants, medical doctors practicing in Anson County, allegedly boycotted the Anson County Hospital by agreeing to place their patients in other facilities in June and August of 1979. Plaintiff alleges that this deliberate withholding of business caused the hospital to lose $150,000 in operating revenues. As a result, the Anson County Commission had to appropriate $40,000 from the general fund in July 1979 to compensate for the lost revenue. Plaintiff alleges that he and the other class members were forced to bear

the hospital's deficits through higher property taxes. Plaintiff now seeks $450,000 in treble damages.

Defendants moved to dismiss the complaint, and, after argument, the court ruled that the complaint would be dismissed unless plaintiff amended his complaint in good faith to show facts sufficient to confer standing to bring suit under 15 U.S.C. § 15. Plaintiff filed his amended complaint on June 12, 1980, and the case was heard on all pending matters in chambers on that date. In an order filed June 17, 1980, the court directed the parties to file briefs on the sufficiency of the amended complaint, emphasizing the questions (1) whether the complaint adequately pleaded a derivative action by taxpayers in behalf of Anson County and (2) whether, with respect to the nonderivative portions of the complaint, plaintiff satisfied the "target area" test which is followed in this circuit. For the following reasons, the court finds that plaintiff has satisfied neither requirement and therefore dismisses the complaint.

*I.  The Complaint Does Not Adequately Allege a Derivative Action on Behalf of Taxpayers.*

In his amended complaint, plaintiff alleges that North Carolina law entitles him to bring a derivative action on behalf of Anson County taxpayers "because of the failure and refusal of the County Commissioners to take proper action to protect the taxpayers from loss of property in the form of increased taxes." Plaintiff asserts that N.C. G.S. § 153A–11 places the county government in the position of a corporation and taxpayers in the position of shareholders. North Carolina decisions have stated that the right of a taxpayer to bring derivative actions is analogous to the right of a shareholder in a private corporation. *See, e. g., Kloster v. Region D Council of Governments,* 36 N.C.App. 421, 245 S.E.2d 180 (1978). Hence plaintiff argues that taxpayers should be allowed to sue derivatively under the Clayton Act.

■ Plaintiff has not cited any authority which has affirmed a taxpayer's right to bring a derivative action under the Clayton

Act. In considering this issue, the Eighth Circuit found "no case ... which allows a private citizen to assert derivatively an antitrust claim on behalf of the city in which he lives," *Cosentino v. Carver-Greenfield Corp.,* 433 F.2d 1274, 1277 (8th Cir. 1970), and this court has found no such cases. But this court need not decide whether all taxpayers are prohibited from bringing such derivative actions because, in the instant case, plaintiff has not alleged facts sufficient to establish standing in a conventional shareholders' derivative suit under the Clayton Act. Courts traditionally have held that, absent collusion or fraud by the corporation's directors, shareholders do not have a right to bring derivative suits under the Clayton Act. The Third Circuit has stated the doctrine:

"The Supreme Court, and, following it, the Courts of Appeals, have repeatedly stated and applied the doctrine that a stockholder's derivative action, whether involving corporate refusal to bring antitrust suits or some other controversial decision concerning the conduct of corporate affairs, can be maintained only if the stockholder shall allege and prove that the directors of the corporation are personally involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way."

*Ash v. International Business Machines, Inc.,* 353 F.2d 491, 493 (3d Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966). *See United Copper Securities Co. v. Amalgamated Copper Co.,* 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917).

■ Here plaintiff asserts that the Anson County Board of Commissioners' refusal to join his action against defendants, as evidenced by the County Commission's minutes attached to plaintiff's amended complaint, satisfies the requirement of a showing of fraud or collusion. Merely stating that the Board of County Commissioners declined to join this lawsuit, however, does

not amount to fraud or collusion. The County Commissioners appear to have made a reasoned decision not to pursue legal action against the doctors. Although this decision may not have been in the best interests of the county's taxpayers, it does not amount to fraud or collusion. Plaintiff, on behalf of taxpayers, does not have requisite standing to bring a derivative claim even if taxpayers may be properly analogized to shareholders in a private corporation under the antitrust laws.

*II. The Complaint Does Not Satisfy the "Target Area" Test.*

■ Plaintiff has not shown the necessary connection between the statutory antitrust prohibitions and his alleged injury to establish standing under the Clayton Act. The standard in this circuit which plaintiff must meet to establish that connection is known as the "target area" test, under which plaintiff has standing to sue under Section 4 of the Clayton Act only if he "can show himself within the section of the economy in which the violation threatened a breakdown of competitive conditions and that he was proximately injured thereby...." *South Carolina Council of Milk Producers, Inc. v. Newton*, 360 F.2d 414, 418 (4th Cir.), *cert. denied*, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966). The Fourth Circuit further stated:

> "The pivot of decision presently is whether the defendants' asserted conduct was the proximate cause of the plaintiffs' asserted injury. If the damage was merely incidental or consequential, or if the defendants' antitrust acts are so removed from the injury as to be only remotely causative, the plaintiffs have not been injured 'by reason of anything forbidden in the antitrust laws' as contemplated by the Clayton Act."

*Id.* at 419. Although plaintiff and other Anson County taxpayers may have suffered economic losses due to the county's imposition of a higher tax rate, plaintiff has not shown that his injuries occurred because of anything forbidden in the antitrust laws *as contemplated* by the Clayton Act.

Plaintiff need not show that he was *directly* injured by defendants' actions, and this court has found that plaintiff suffered an injury to his property within the meaning of the Clayton Act. But the "target area" doctrine does not bring all such economic injuries within the coverage of the antitrust acts. Plaintiff must show sufficient causal connection to establish that the alleged antitrust violation was a material cause of his injuries and that *Congress intended* the Clayton Act to prohibit the allegedly illegal activity.

> "While any antitrust violation disrupts the competitive economy to some extent and creates foreseeable ripples of injury which may be shown to reach individual employees, stockholders, or consumers, not all of these have the requisite standing to sue for treble damages. Consequently, a plaintiff must allege a causitive [sic] chain to his injury which is direct rather than incidental, or which indicates his business or property was within the target of the defendant's illegal act."

*Stokes Equipment Co. v. Otis Elevator Co.*, 340 F.Supp. 937, 941 (E.D.Pa.1972).

The higher property taxes imposed on plaintiff and Anson County taxpayers, though likely a result of the doctors' actions, is not an injury that Congress intended the Clayton Act to remedy. The basic purpose of the antitrust acts, including the Clayton Act, "was to prevent economic concentration in the American economy by keeping a large number of small competitors in business." *United States v. Von's Grocery Co.*, 384 U.S. 270, 275, 86 S.Ct. 1478, 1480, 16 L.Ed.2d 555 (1966). Defendants' actions, for all their potential harm to taxpayers, were not actions Congress intended to prohibit in its attempt to discourage economic concentration, and an award of relief here would only peripherally affect business competition among doctors. Although defendants' allegedly improper actions directly harmed the hospital and the county and indirectly harmed the taxpayers, the economic harm to the taxpayers is too far removed from the purpose of the Clayton Act—attempting to preserve a competitive

economy—to warrant relief under its provisions. Plaintiff thus cannot be said to be within the "target area" of the act.

Although plaintiff does not have standing to bring this action under the Clayton Act against defendants, this holding does not exculpate defendants. On the record before this court, the conduct of defendants in removing their patients from the Anson County Hospital and boycotting the hospital was reprehensible; defendants damaged the hospital and unduly burdened the county and, ultimately, its taxpayers, by their actions. However, plaintiff's attempt to secure relief directly or derivatively through Section 4 of the Clayton Act is not a proper method of obtaining relief for the county and its taxpayers.

IT IS THEREFORE ORDERED that defendants' motion to dismiss is allowed.