2008 ME 108

**Jason JOYCE et al.**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued: May 15, 2008.

Decided: July 1, 2008.

Stephen C. Whiting, Esq. (orally), The Whiting Law Firm, P.A., Portland, ME, for Jason & Priscilla Joyce.

G. Steven Rowe, Attorney General, Sarah A. Forster, Asst. Atty. Gen. (orally),

William H. Laubenstein, III, Asst. Atty. Gen, Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Concurrence: CLIFFORD, J.

MEAD, J.

[¶ 1] In 2006, we held that Maine's statutory prohibition against the use of public funds to pay tuition at private sectarian schools through the state's tuition program did not violate the Free Exercise Clause, the Establishment Clause, or the Equal Protection Clause of the First Amendment to the United States Constitution. *Anderson v. Town of Durham*, 2006 ME 39, ¶ 61, 895 A.2d 944, 961, *cert. denied*, —— U.S. ——, 127 S.Ct. 661, 166 L.Ed.2d 512 (2006); 20-A M.R.S. § 2951(2) (2007).[1] We said that while the Legislature could likely allow at least indirect tuition payments to sectarian schools if it wished, nothing in the Constitution compelled it to do so. *Anderson*, 2006 ME 39, ¶¶ 56, 61, 895 A.2d at 959, 961. This case presents a related question of statutory interpretation—whether section 2951(2), in addition to prohibiting direct tuition payments to sectarian schools through the state program, also prohibits a municipality from using its general funds to provide a subsidy to parents when they pay tuition to a sectarian school for their children's secondary education. We conclude that under these circumstances it does.

## I. FACTS AND PROCEDURE

[¶ 2] Jason and Priscilla Joyce live on Swan's Island, which has no high school of its own and does not contract with any school administrative district for the education of its secondary students. The Joyces have two children in high school who attend Life Christian Academy, a private religious school in Ellsworth. They pay their children's tuition directly.

[¶ 3] In March 2006, the Town of Swan's Island adopted a "Nondiscrimination Family Subsidy Policy." The policy provides that if a family living on the island year-round has a child enrolled in a private high school, and the Town is not paying the child's tuition, then the family is entitled to a monthly subsidy. The subsidy is equal to the monthly tuition paid to the private school, so long as that amount does not exceed the monthly cost to send a student to Mount Desert Island High School. To receive the subsidy, the family is required to show the town clerk proof of the amount of tuition paid that month. The policy places no restrictions on the private schools that qualify. During the 2006–2007 school year, the Joyces received monthly subsidies from the Town in accordance with the policy; they were the only family that did.

[¶ 4] In May 2007, the Attorney General's Office, responding to an inquiry from the Commissioner of Education, issued an opinion letter stating that the policy violated section 2951(2) because "[The Town] may not use public funds to pay tuition for sectarian education, whether the funds are called subsidies, grants or otherwise, or whether the funds are paid directly to the

---

1. Title 20-A M.R.S. § 2951(2) (2007) provides:

   A private school may be approved for the receipt of public funds for tuition purposes only if it:

   . . .

   2. **Nonsectarian.** Is a nonsectarian school in accordance with the First Amendment of the United States Constitution.

education institution or to the parents of the student." Based on the Attorney General's opinion, as well as opinions previously given by the Town's attorney and the Maine Municipal Association, the Town's selectmen suspended the policy until its legality could be resolved. If the policy is found to be legal, the Town intends to make retroactive payments to its residents who qualify.

[¶ 5] The Joyces filed a complaint in the Superior Court, seeking a declaration that the policy does not violate section 2951(2). *See* 14 M.R.S. §§ 5953, 5954 (2007) (providing that courts have the power to declare rights of a person affected by a statute or municipal ordinance). The State moved for a judgment on the pleadings pursuant to M.R. Civ. P. 12(c), contending that "the Policy is nothing more than an attempt to do an end run around the words and the will of the Legislature." In opposing the State's motion, the Joyces asserted that they were entitled to a summary judgment on a finding that the policy did not violate the statute as a matter of law.[2]

[¶ 6] The Superior Court (Kennebec County, *Mills, J.*) granted the State's motion for judgment on the pleadings, and declared that the "Nondiscrimination Family Subsidy Policy" violates section 2951(2). This appeal followed.

## II. DISCUSSION

[¶ 7] Unlike the question presented in *Anderson,* here we are not called upon to determine the constitutionality of section 2951(2), but rather to construe the language of the statute. We interpret a statute de novo, with the primary purpose of giving effect to the intent of the Legislature. *Currier v. Huron,* 2008 ME 19, ¶ 14,

940 A.2d 1085, 1088. "If the language is clear and unambiguous, the plain meaning of the statute is addressed...." *Id.*

[¶ 8] Section 2951(2) provides that:

A private school may be approved for the receipt of public funds for tuition purposes only if it:

**2. Nonsectarian.** Is a nonsectarian school in accordance with the First Amendment of the United States Constitution.

20–A.M.R.S. § 2951(2).

[¶ 9] The State urges that we accept what it sees as the statute's plain meaning and hold that it bars any public funds, state or municipal, from reaching a private sectarian school as tuition payments, directly or indirectly. The Joyces argue that: (1) in section 2951(2) the Legislature intended to prohibit only funds appropriated through the state tuition program established by Title 20–A from being used to pay sectarian school tuition, and (2) Swan's Island's subsidy policy is unrelated to education funding in any event.

### A. The Scope of Section 2951(2)

[¶ 10] The Joyces point out that section 2951(2) appears in Title 20–A, which in part establishes the state's program for paying the private school tuition of students living in a school district without its own high school. *See* 20–A M.R.S. §§ 5204(4), 5806 (2007). However, their contention that the statutory placement of section 2951(2) means that the Legislature intended to limit its application to funds appropriated through that program is unpersuasive for several reasons.

[¶ 11] First, the straightforward language chosen by the Legislature says that a private sectarian school may

---

**2.** The Joyces argued that the submission of matters outside the pleadings converted the State's motion into one for summary judgment. *See* M.R. Civ. P. 12(c).

not receive public funds for payment of tuition. No qualifier is used limiting the restriction to funds disbursed in accordance with Title 20–A, or exempting funds raised by any level of government. The term "public funds" is not defined in our statutes, but "[i]t is a fundamental rule of statutory interpretation that words in a statute must be given their plain and ordinary meanings." *In re Adoption of M.A.*, 2007 ME 123, ¶ 14 n. 3, 930 A.2d 1088, 1093 (quotation marks omitted). In determining the plain meaning of words, we will not imply limitations where none appear. *See id.*

[¶ 12] One court, noting that when funds enter a corporation's treasury they become corporate property, said that the same holds true for government—when funds enter the public treasury at any level they become public funds. *See Shipley v. Smith*, 45 N.M. 23, 107 P.2d 1050, 1051 (1940). In section 2951(2) the Legislature chose the broad, unrestricted term "public funds," and we must give that term its ordinary, unrestricted meaning. Accordingly, "public funds" as it is used in section 2951(2) means funds flowing from the public coffers, either the State's or the Town of Swan's Island's.[3]

[¶ 13] This conclusion is supported by the blanket proscription of 30–A M.R.S. § 5724(9) (2007), which provides in part:

> A municipality may not provide services, materials or equipment for use in religious courses, devotional exercises, religious training or any other religious activity.

[¶ 14] It would be wholly illogical to conclude that the Legislature explicitly banned the Town of Swan's Island from providing even indirect support for a sectarian school's religious mission on the one hand, while allowing the Town's funds to be used to pay tuition at that school on the other. That conclusion would mean, for example, that a municipality could not allow a school to borrow its audiovisual equipment for a faculty religious retreat, but could provide public funds that the school could then use to buy its own. We cannot find that the Legislature intended such an inconsistent result. *See Dombkowski v. Ferland*, 2006 ME 24, ¶ 22, 893 A.2d 599, 604 (providing that a statute is construed to "avoid absurd, illogical, or inconsistent results" (quotation marks omitted)). When the Legislature meant to allow municipal support for a sectarian school's secular function, it did so explicitly. *See* 30–A M.R.S. § 5724(5)-(8) (2007) (allowing qualified municipal support for transportation, secular textbooks, medical services, and standardized testing).

[¶ 15] Finally, we are cognizant of the fact that in 2003, after the U.S. Supreme Court ruled that the use of public funds to pay sectarian school tuition did not necessarily violate the Establishment Clause, the Legislature considered and rejected a bill that would have repealed section 2951(2). *See Anderson*, 2006 ME 39, ¶¶ 8, 9, 895 A.2d at 949 (citing *Zelman v. Simmons–Harris*, 536 U.S. 639, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002)). That reaffirmation of public policy strengthens our conclusion that the Legislature's use of the term "public funds" in section 2951(2) was

---

**3.** In the section immediately following section 2951, the Legislature requires reports to the Commissioner of Education from "[a] private school receiving *state funds*." 20–A M.R.S. § 2952 (2007) (emphasis added). Both sections were originally enacted by the same Public Law. P.L.1981, ch. 693, § 5 (effective July 1, 1983). We do not presume that use of the term "public funds" in one section and "state funds" in the next is inadvertent, rather we assume that if the Legislature meant to refer to "state funds" in both sections it would have.

purposeful. The Legislature could have modified, replaced, or eliminated altogether its broad language if it wished; instead, it left the statute unchanged.

## B. Whether Swan's Island's Policy Implicates Section 2951(2)

[¶ 16] Having concluded that section 2951(2) bars the use of both state and municipal funds for payment of tuition at private sectarian schools, it follows that Swan's Island's subsidy policy is unlawful if it results in the Town using its funds for that purpose. The Joyces assert that it does not, rather they maintain that the policy provides a compensatory subsidy directly to them from the Town's general funds—paid only after they make their monthly tuition payments—that they may then use in any way they like. Taking that view, they argue that the subsidy has nothing to do with education funding. We disagree.

[¶ 17] The first problem with this argument is the implicit assumption that the Town's general funds used to pay the subsidy are purely its own, that is, separate and distinct from state funds. In fact, the State provides a significant share of the Town's funds for education. 20–A M.R.S. §§ 15671(1), 15752 (2007).[4] Absent state education funding, the Town would in all likelihood be unable to fund the subsidy. To say that the Town may segregate state education funds to pay tuition at approved schools, thereby making available purely town funds to pay a subsidy for tuition at an unapproved school, is to invite a shell

game with public monies. We decline to endorse such a scenario. The funding system established by Title 20–A results in a combination of state and municipal funds to pay for education. *See* 20–A M.R.S. § 15752.

[¶ 18] Beyond the issue of where the Town's funding for the subsidy originates is the reality that the subsidy is simply a straw man for tuition payments by the Town to the Joyces' sectarian school. Notwithstanding the Joyces' effort to characterize the subsidy as unrelated to education funding: (1) the only way to receive the subsidy is to pay tuition to a non-approved school;[5] (2) subject to a cap, the amount of the subsidy is equal to, and varies directly with, the amount of tuition paid to the non-approved school; and (3) the subsidy may only be claimed upon proof of the amount of tuition actually paid each month. In their brief, the Joyces themselves describe the result as being "essentially reimbursed by the Town, out of general Town funds, for the tuition they paid to their private school that month."

[¶ 19] It is irrelevant whether Swan's Island's public funds are paid directly to the Joyces' school as tuition, or paid to the Joyces immediately after they pay the tuition themselves—the subsidy's direct correlation to sectarian school tuition makes its intent unmistakable, and the end result the same. Given the subsidy's unseverable connection to a result barred by section 2951(2), what the Town cannot do with funds received through Title 20–A, it also cannot do with its general funds.[6]

---

4. Title 20–A M.R.S. § 15671(1) (2007) provides that "[t]he State and each local school administrative unit are jointly responsible for contributing to the cost of the components of essential programs and services"; Title 20–A M.R.S. § 15752 (2007) specifies that "the Legislature each year shall provide at least 55% of the cost of the total allocation for

kindergarten to grade 12 education from General Fund revenue sources."

5. Attendance at an approved school results in the Town paying a student's tuition directly. 20–A M.R.S. § 5204(4) (2007).

6. The Joyces argue that the subsidy policy is an allowable exercise of the Town's home rule

The entry is:

Judgment affirmed.

CLIFFORD, J., concurring.

[¶ 20]   Because the result in this case is dictated by the decision in *Anderson v. Town of Durham*, 2006 ME 39, 895 A.2d 944, I concur.

authority.  *See* 30–A M.R.S. § 3001 (2007).  A municipality's authority to enact local legislation may be denied by the Legislature, "either expressly or by clear implication."  *Id.* Given our construction of the term "public funds" in section 2951(2) to include municipal as well as state funds, the Legislature expressly denied Swan's Island the authority to use municipal funds to pay tuition at a sectarian school.