## GUARDIANSHIP OF ZACHARY Z.

Supreme Judicial Court of Maine.

Submitted on Briefs May 9, 1996.
Decided June 10, 1996.

William L. Dawson, Jr., Glass & Dawson, P.A., Belfast, for Petitioner.

Marvin H. Glazaier, Vafiades, Brountas & Kominsky, Bangor, for Respondent.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Dorothy and James Black appeal from the order of the Probate Court (Waldo County, *Barrett, J.*) dismissing their petition for the guardianship of their grandson, Zachary Z., on the dual grounds of improper venue, 18-A M.R.S.A. § 5–205 (1981), and failure to establish the preliminary requirement of termination or suspension of the parental rights of Zachary's father's, 18-A M.R.S.A. §§ 5–204, 5–207(b) (1981). The Blacks argue that the court misconstrued the Probate Code's residence requirement for venue in guardianship proceedings and erred in making a statutorily required finding as to termination of Zachary's father's parental rights on the basis of the pleadings alone. We agree with the Blacks that the court misconstrued the Probate Code with respect to residence for purposes of guardianship venue and erred in making a determination as to termination of the parental rights of Zachary's father's on the basis of the pleadings alone.[1] We therefore vacate the judgment dismissing the Blacks' petition.

On November 27, 1993, Zachary's mother died unexpectedly. Zachary at that time was three years old and living in the family home in Belfast with his mother and father, his mother's daughter from a prior marriage, and his father's son from a prior marriage. Zachary had a strong relationship with his maternal grandparents, Dorothy and James Black, but after his mother's death his father, Edward Ziobron, restricted Zachary's contact with his grandparents. In January 1994 the Blacks brought an action in the District Court to obtain court-ordered contact with their grandson. While that action was pending, Ziobron took Zachary's thirteen-year-old half-brother out of school and left Maine with him and Zachary. Ziobron remained out of contact while he traveled with his sons from motel to motel, south to Florida and then west as far as Montana. At the end of May 1994 Ziobron rented a home in Colorado.

At some point in time Ziobron returned to Maine and in September 1994 testified at a District Court custody hearing regarding his older son. The court (Belfast, *Staples, J.*) explicitly found that Ziobron's removal of the children from Belfast was an unjustified "unilateral move which was intended to place [the older boy] beyond any meaningful contact with his mother." The court held Ziobron in contempt of court for violating the custody provision of Ziobron's divorce decree and amended Ziobron's divorce decree to limit the older boy's contact with Ziobron to supervised visitation. The Blacks at this juncture petitioned the Waldo County Probate Court pursuant to 18-A M.R.S.A. § 5–204 (1981)[2] to be appointed the guardians of Zachary, who by now was four years old. Zachary's whereabouts at the time of the guardianship petition were unknown,[3] but the Blacks identified his residence on their petition as the family home in Belfast.

Ziobron objected to the Blacks' petition for the guardianship of Zachary. He did not, however, participate in any of the scheduled guardianship hearings or related probate hearings concerning his wife's estate. After many continuances, at a hearing in which Ziobron was represented but at which he was not physically present, the Probate Court ultimately heard arguments regarding section 5–204's preliminary requirement that parental rights be suspended or terminated before the court may appoint a guardian for a child. At this hearing the court *sua sponte* raised the question of its venue. The court heard no testimony and admitted no exhibits in evidence.

The next day the court issued an order dismissing the Blacks' guardianship petition on dual jurisdictional grounds: first, that the

---

1. Because venue in guardianship proceedings is a question of jurisdiction properly addressed by the court at any point, we need not address the issue of whether Zachary's father waived his right to assert venue as a defense. M.R.Prob. 12(a)(5).

2. 18-A M.R.S.A. § 5–204 (1981) provides in pertinent part:

> The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order.

3. Ziobron told an investigator he did not know where Zachary was.

court lacked subject matter jurisdiction pursuant to 18–A M.R.S.A. § 5–204 (1981) because Ziobron's parental rights were not terminated, and second, that the court lacked jurisdiction because Zachary did not reside in Waldo County and therefore the Waldo County Probate Court did not meet the jurisdictional venue requirement of 18–A M.R.S.A. § 5–205 (1981). The Blacks timely appealed to this Court pursuant to M.R.Prob. 73.

## I

■ We consider first the question of venue. The Waldo County Probate Court, a court of limited jurisdiction, has jurisdiction over the Blacks' guardianship petition only if Zachary resided or was present in Waldo County. 18–A M.R.S.A. § 5–205 (1981).[4] Although the Probate Code[5] does not expressly identify a date for determining venue, we determine venue in accord with the Uniform Probate Code at the time proceedings were commenced. Zachary apparently was not present in Waldo County when the Blacks filed their petition but was elsewhere with his father. Jurisdiction is proper, therefore, only if Zachary "resided" in Waldo County at the time of the Blacks' guardianship petition.

■ The Probate Code does not define residence. Determining whether the Probate Court erred in holding that Zachary did not reside in Waldo County requires us to construe "resides" for purposes of section 5–205. This is an issue of first impression.[6] Statutory interpretation is a matter of law. *Community Telecommunications Corp. v. Loughran*, 651 A.2d 373, 376 (Me.1994). We

review the trial court's decision in a matter of law *de novo*. *Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me.1995).

In interpreting a statute, we first examine the plain meaning of the statutory language seeking to give effect to the legislative intent, and we construe the statutory language to avoid absurd, illogical, or inconsistent results. In addition, we consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved."

*Nasberg v. City of Augusta*, 662 A.2d 227, 229 (Me.1995) (citations omitted). Because "resides" is not obviously self-defining, we must look beyond the plain meaning of the statutory language in order to construe section 5–205.

■ We have defined "residence" in other contexts as meaning a place a person lives or has his home and which, although he may be absent, he intends to return to and not to abandon.[7] This construction of residence comports with the purposes and policies articulated by the Legislature in enacting the Probate Code, and we adopt it for purposes of guardianship venue pursuant to section 5–205. The Legislature directed that the Probate Code be liberally construed. 18–A M.R.S.A. § 1–102(a) (1981). Liberal construction, so that the Waldo County Probate Court may hear the Blacks' petition, requires interpreting "residence" for purposes of venue in guardianship proceedings as a place where a person lives or has his home and which, if he should be absent, he intends to return to and not to abandon.

---

**4.** 18–A M.R.S.A. § 5–205 (1981) provides:
> The venue for guardianship proceedings for a minor is in the place where the minor resides or is present.

The venue provision for guardianship proceedings codified in the Maine Probate Code at 18–A M.R.S.A. § 5–205 (1981) is virtually identical to § 5–205 of the Uniform Probate Code save for the Maine Code's lack of a date of venue determination. Uniform Estate, Probate and Related laws § 5–205, 8 U.L.A. 447 (1983).

**5.** Maine substantially adopted the Uniform Probate Code effective January 1, 1981. P.L.1979, ch. 540. *Matter of Anna S. Howes*, 471 A.2d 689, 691 (Me.1984).

**6.** A search of the Uniform Probate Code jurisdictions revealed no decision construing "resides" for purposes of venue in guardianship proceedings pursuant to section 5–205.

**7.** *See, e.g., Belanger v. Belanger*, 240 A.2d 743, 746 (Me.1968) (construing residence for purposes of statutory divorce decree venue as synonymous with "domicile," that is, "a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart").

Such liberal construction allows the Probate Court to protect children who are removed from their Maine homes for the duration of guardianship proceedings by persons seeking to avoid a Maine forum. Limiting residence for guardianship venue to a jurisdiction where a child is living, without regard to intent to abandon, allows a person with control over a child to avoid the guardianship jurisdiction of a Maine probate court by taking the child across county lines, there to wait until the guardianship proceedings are dismissed for lack of jurisdiction, and then to return at will, only to leave again with the child should new guardianship proceedings be initiated. Allowing such manipulation of the courts does not comport with the purposes of the Probate Code, which subscribe generally to judicial efficiency and simplification of process. 18–A M.R.S.A. § 1–102(b) (1981).

 The Blacks in their guardianship petition allege Zachary's residence to be Belfast and thereby establish that venue is proper pursuant to our construction of "resides" for purposes of guardianship proceedings in the Probate Court. The court heard no evidence as to whether Ziobron intended to abandon his and Zachary's residence in Belfast.[8] The court erred in construing residence for purpose of section 5–205 as the place where the child in question is living and in dismissing the Blacks' petition for guardianship without considering evidence as to Ziobron's intent to return when he took Zachary out of Waldo County.

## II

 The Probate Court dismissed the Blacks' guardianship petition not only for lack of venue but also on the alternative jurisdictional ground that Ziobron's parental rights had not been terminated or suspended. The Probate Court as a court of limited jurisdiction is authorized to issue a guardianship decree only after the court finds parental rights terminated or suspended. 18–A M.R.S.A. §§ 5–204, 5–207(b) (1981); *Conservatorship of Justin R.*, 662 A.2d 232, 234 (Me.1995). The required finding of termination or suspension of parental rights may be made on the basis of either a prior court order or circumstances. 18–A M.R.S.A. § 5–204 (1981). A finding that parental rights have been terminated by circumstances may be established by circumstances of abandonment or unfitness to parent. *See In re Krystal S.*, 584 A.2d 672, 674 (Me.1991).

 The court here dismissed the Blacks' petition without hearing evidence as to whether Ziobron's rights were terminated or suspended. The court in effect dismissed the petition after making the required finding regarding termination solely on the basis of the pleadings. M.R. Prob. 8(a)(1) requires petitioners to set forth in "short and plain terms" all matters required by statute. The Blacks attached to their petition a description of circumstances that they allege terminate Ziobron's parental rights as a matter of law. The court erred in dismissing the Blacks' petition for lack of jurisdiction without hearing evidence as to the parental termination finding required by sections 5–207(b) and 5–204.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

8. Ziobron's ex-wife at the custody hearing for Ziobron's older son referred to Ziobron's residence in Belfast as "the farm." She testified that Ziobron left someone "housesitting" when he left Waldo County with his sons. No reference in the record provides information on Ziobron's ownership status of the farm at the time of the Blacks' guardianship petition or if he disposed of it before or after leaving Belfast with his sons. One court has noted the significance, in determining residence, of the bridges back to the forum that a party fails to burn. *Leon v. Caribbean Hosp. Corp.*, 848 F.Supp. 317, 318 (D.P.R. 1994). Six weeks after the Probate Court dismissed the Blacks' guardianship petition for improper venue, Ziobron petitioned the Waldo County Probate Court to be appointed conservator for Zachary. On his petition Ziobron lists Zachary's residence as Belfast.