2007 ME 123

**Adoption of M.A et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Feb. 27, 2007.
Decided: Aug. 30, 2007.

Mary L. Bonauto, Esq., Gay & Lesbian Advocates & Defenders, Boston, MA, Judith M. Berry, Esq., Gorham, Patricia A. Peard, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for appellants.

Donna A. Bailey, Esq., Moulton, Forte & Bailey, P.A., Wells, Guardian ad Litem.

G. Steven Rowe, Attorney General, Gregg D. Bernstein, Asst. Atty. Gen., Janice S. Stuver, Asst. Atty. Gen., Matthew Pollack, Asst. Atty. Gen., Augusta, (for State of Maine Office of the Attorney General), Michael P. Asen, Esq., Mittel Asen

LLC, Portland, Of counsel: Paul H. Smith, Esq., William M. Hohengarten, Esq., Eric Berger, Esq., Jenner & Block LLP, Nathalie F.P. Golfoyle, Esq., American Psychological Association, Washington, D.C., (for American Psychological Association, Maine Psychological Association, National Association of Social Workers and its Maine Chapter; Maine Association of Psychiatric Physicians, Child Welfare League of America, Maine Children's Alliance, Maine Medical Association American Academy of Pediatrics Maine Chapter, Even B. Donaldson Adoption Inst., Kids First, and Community Counseling Center), for amici curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, SILVER, and MEAD, JJ.

LEVY, J.

[¶ 1] A.C. and M.K. appeal from the judgment of the Cumberland County Probate Court (*Mazziotti, J.*) dismissing their joint petitions for adoption and name change as to their foster children, M.A. and R.A.[1] A.C. and M.K. contend that the court erred in concluding that it lacks jurisdiction, pursuant to 18–A M.R.S. § 9–301 (2006), to consider joint petitions for adoption filed by two unmarried individuals. Because we conclude that the court has jurisdiction and the petitions are not otherwise barred by section 9–301, we vacate the court's judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] The petitions allege the following facts, which are presumed to be true for the purposes of the pending appeals. In early 2001, A.C. and M.K., an unmarried, same-sex couple, became foster parents to the minor children and biological siblings,

M.A. and R.A. At the time, M.A. was one week shy of her fourth birthday and R.A. was four months old. The Department of Health and Human Services received the custody of the children as a result of a jeopardy order entered in a child protection proceeding in the District Court (Biddeford, *Foster, J.*). The parental rights of the children's birth parents were subsequently terminated by the court with their consent. Both children have been diagnosed with post-traumatic stress disorder, reactive attachment disorder, and attention deficit and hyperactivity disorder.

[¶ 3] Nearly two years after the children came into the Department's custody, A.C. and M.K. applied to the Department to adopt the children. An independent home study was completed in early 2006 as required by 18–A M.R.S. § 9–304(a–1) (2006). The home study report recommended that A.C. and M.K. be approved to jointly adopt the children, concluding that:

> [A.C. and M.K.] are able to parent children with moderate to severe special needs that include attachment disorders, mental illness, ADHD/ADD, learning disabilities and delays. They are able to parent children who require a wide range of services and may not live independently as . . . adult[s].

[¶ 4] The children's court-appointed guardian ad litem recommended in favor of the adoption, concluding that "[h]aving two legal parents forever will clearly be in the children's best interests." The Department's adoption worker and adoption supervisor responsible for the children also issued reports strongly supporting the adoptions, recommending that the adoptions "be legalized as soon as possible to provide [each child] with the security that only permanence can provide." In April

---

1. The petitioners' motion to proceed with pseudonyms was granted by the Probate Court.

2006, the Department, acting through its Commissioner, consented to the joint adoption of both children by A.C. and M.K.

[¶ 5] A.C. and M.K. filed two petitions for adoption in the Cumberland County Probate Court in May 2006: one to jointly adopt M.A., and the other to jointly adopt R.A. The court ordered the two petitions consolidated pursuant to M.R. Prob. P. 42(a). The following month, the court denied the petitions in a written order that simply stated that each was "denied for lack of jurisdiction pursuant to 18–A M.R.S.A. [§ ] 9–301," without addressing the merits of the petitions. Section 9–301 provides: "A husband and wife jointly or an unmarried person, resident or nonresident of the State, may petition the Probate Court to adopt a person, regardless of age, and to change that person's name." 18–A M.R.S. § 9–301 (2006). These appeals followed. The Attorney General, as well as several organizations and associations,[2] submitted briefs as amici curiae pursuant to M.R.App. P. 9(e)(1).

## II. DISCUSSION

■ [¶ 6] The Probate Court concluded that it lacked jurisdiction to consider A.C. and M.K.'s joint petitions to adopt M.A. and R.A. based on the language of section 9–301. We review the Probate Court's rulings on questions of law de novo. *See Estate of Colburn,* 2006 ME 125, ¶ 14, 909 A.2d 214, 218. The term "jurisdiction" refers to " 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." ' *Landmark Realty v. Leasure,* 2004 ME 85, ¶ 7, 853 A.2d 749, 750 (quoting *Kontrick v. Ryan,* 540 U.S.

443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)).

[¶ 7] In the present case, the Probate Court has personal jurisdiction over the petitioners and the children they seek to adopt. A.C., M.K., and the children have resided continuously in Maine since R.A.'s birth in 2000. The Probate Court also has exclusive subject-matter jurisdiction over adoption petitions. *See* 4 M.R.S. § 251 (2006) (providing that a judge of probate has jurisdiction "to grant leave to adopt children"); 18–A M.R.S. § 9–103(a)(1) (2006) (granting exclusive jurisdiction over adoption petitions). Regardless of whether the adoption petitions filed in this case may be filed individually or jointly, that procedural issue does not affect the Probate Court's subject-matter jurisdiction.

[¶ 8] Because the Probate Court has personal jurisdiction over the parties and the children, and subject-matter jurisdiction to act on petitions for adoption, the Probate Court erred in dismissing the petitions for lack of jurisdiction. However, to the extent the Probate Court inferred that a joint petition by unmarried persons is prohibited by section 9–301, we must still determine whether a joint petition for adoption filed by two unmarried persons is procedurally barred because the statute addresses joint petitions only in connection with a husband and wife, but not in connection with two unmarried persons. *Cf. Mason v. City of Augusta,* 2007 ME 101, ¶ 15, 927 A.2d 1146, 1150 (addressing whether a complaint stated a claim upon which relief can be granted after concluding that the trial court improperly dismissed the complaint for lack of jurisdiction).

2. The organizations and associations that filed a joint amicus curiae brief include: American Psychological Association; Maine Psychological Association; National Association of Social Workers; National Association of Social Workers, Maine Chapter; Maine Association of Psychiatric Physicians; Child Welfare League of America; Maine Children's Alliance; Maine Medical Association; American Academy of Pediatrics, Maine Chapter; Evan B. Donaldson Adoption Institute; Kids First; and Community Counseling Center.

### A. The Plain Meaning of Section 9–301

■ [¶ 9] In construing a statute, we look first to its plain meaning. *See City of Bangor v. Penobscot County*, 2005 ME 35, ¶ 9, 868 A.2d 177, 180. In addition, we do not read exceptions, limitations, or conditions into an otherwise clear and unambiguous statute. *See Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 18, 745 A.2d 387, 392; *see also In re K.M.*, 274 Ill.App.3d 189, 210 Ill.Dec. 693, 653 N.E.2d 888, 892 (1995).

[¶ 10] The petitioners and the Attorney General both assert that section 9–301 is clear and unambiguous. They observe that the statute does not expressly prohibit two unmarried persons from jointly petitioning to adopt a child. The petitioners urge us to treat the statute's language permitting a petition to adopt by a "husband and wife jointly" as functioning solely as a restriction on petitions brought by married persons. They note that other jurisdictions have construed similar statutes on this basis and have recognized that the purpose of requiring a married person to join his or her spouse to an adoption petition is "specific to the marital relationship and its attendant legal obligations." *In re Infant Girl W.*, 845 N.E.2d 229, 242–43 (Ind.Ct.App.2006), *transfer denied sub nom. In re Adoption of M.W.*, 851 N.E.2d 961 (Ind.2006); *see also In re M.M.D.*, 662 A.2d 837, 848 (D.C.1995); *Adoption of Tammy*, 416 Mass. 205, 619 N.E.2d 315, 318 n. 3 (1993); *In re Jacob*, 86 N.Y.2d 651, 636 N.Y.S.2d 716, 660 N.E.2d 397, 400 (1995).

[¶ 11] In support of their view that the statute is unambiguous, the petitioners also cite the statutory rule of construction, stated in 1 M.R.S. § 71(9) (2006), that "[w]ords of the singular number may include the plural; and words of the plural number may include the singular." If applied to section 9–301, the statute's reference to petitions by "an unmarried person" includes the plural "unmarried persons." We perceive two problems, however, with resting a reading of section 9–301 squarely on the rule of construction stated in section 71(9).

[¶ 12] First, the rule stated in section 71(9) does not apply if the resulting construction "is inconsistent with the plain meaning of the enactment." 1 M.R.S. § 71 (2006). A reasonable argument can be made, counter to that advanced by the petitioners, that because section 9–301 mentions joint petitions only in connection with married persons, the plain meaning of the statute is that joint petitions are permitted to be filed only by married persons. In addition, even if the rule is determined to be applicable, it cannot be applied to produce a result that is contrary to the adoption statute's purpose or design. Accordingly, contrary to the petitioner's contention, the application of the rule of construction in section 71(9) does not end our inquiry in this case.

[¶ 13] Second, construing the phrase "unmarried person" to include the plural "unmarried persons" would not only permit a joint petition by two unmarried persons, but would also arguably permit an indefinite number of persons to join in a single adoption petition. *See In re K.M.*, 210 Ill.Dec. 693, 653 N.E.2d at 894 (citing lower court's concern in this regard). *But see Adoption of Tammy*, 619 N.E.2d at 318–19 (relying on the rule of statutory construction that words of the singular include the plural in concluding that two unmarried persons may file a joint adoption petition). In the unique context of a child adoption statute, a strict application of section 71(9) could lead to a construction of section 9–301 that would produce illogical results.

■ [¶ 14] Although we are not persuaded that the construction of section 9–301 should rest on section 71(9), we are

equally unpersuaded that the plain language of section 9–301 is reasonably susceptible to only one construction. The statute is silent as to whether an unmarried person may or may not be a party to a joint petition. As a general principle of statutory construction, if a statute does not contain "a limiting adverb such as 'solely,' we refuse to imply such a restriction." *Eagle Rental, Inc. v. City of Waterville,* 632 A.2d 130, 131 (Me.1993).[3] One cannot conclude that the statute prohibits two unmarried persons from proceeding by way of a joint petition without reaching beyond the actual language of the statute so as to interpret it to state: "[a] husband and wife jointly or an unmarried person, resident or nonresident of the State, [individually, but not jointly,] may petition the Probate Court to adopt a person." 18–A M.R.S. § 9–301.

[¶ 15] A plain reading of the statute is not only saddled by the need to engage in an inference that introduces the restriction "individually, but not jointly," into the text, but also leads to possibly absurd or illogical results. The adoption statute expressly permits unmarried persons to adopt children and does not expressly prohibit a child from being adopted by two unmarried persons. Therefore, unless one reads section 9–301 as also implicitly establishing a bar that prohibits more than one unmarried person from adopting a particular child, A.C. and M.K. could achieve a joint adoption of the children by filing separate individual petitions for adoption, and then moving to consolidate the petitions into a single adoption proceeding in accordance with M.R. Prob. P. 42(a).[4] In addition, A.C. and M.K. could also proceed by having one file an individual petition to adopt the children and, if successful, that person consenting to a second adoption petition filed by the other, resulting in the adoption of the children by both. In short, if we infer that section 9–301 prohibits joint petitions by unmarried persons, but does not prohibit joint adoption by two unmarried persons, unmarried persons can still accomplish a joint adoption through successive or consolidated individual petitions. With this in mind, construing section 9–301 as prohibiting a joint petition by unmarried persons elevates form over substance to an illogical degree.

[¶ 16] Accordingly, we do not accept the petitioners' contention that the plain language of section 9–301 is free from ambiguity and requires no further inquiry beyond the application of the rule of construction stated in 1 M.R.S. § 71(9). Because the statute is reasonably susceptible of different constructions, it is am-

---

3. In *Eagle Rental* we construed a personal property tax exemption that exempted "[s]tock in trade, including inventory held for resale by a distributor, wholesaler, retail merchant or service establishment." 632 A.2d 130, 131 (Me.1993). We agreed with the taxpayer's contention that this provision did not mean that inventory must be held solely for resale in order to be exempt from taxation:
 [The statute] does not contain the word "solely," or any other limiting language. It is a fundamental rule of statutory interpretation that words in a statute must be given their plain and ordinary meanings, and, without an express inclusion of a limiting adverb such as "solely," we refuse to imply such a restriction.

*Id.* (citation omitted).

4. Maine Rule of Probate Procedure 42(a) states in full:
 (a) Consolidation. When proceedings involving a common question of law or fact are pending before a probate court, the court may order a joint hearing of any or all of the matters in issue in the proceedings, if those proceedings are formal probate or civil or both. The court may order proceedings consolidated if they are all formal probate or all civil. The court may make such orders concerning the procedure therein as may tend to avoid unnecessary costs or delay.

biguous, and we turn to consider its history and purpose for further guidance. *See Williams v. Tyson's Food, Inc.,* 2006 ME 66, ¶ 7, 900 A.2d 195, 197; *Great N. Paper, Inc. v. Penobscot Nation,* 2001 ME 68, ¶ 15, 770 A.2d 574, 580.

B. Legislative History and Purpose

1. History

[¶ 17] The legal adoption of another person's child was unknown at common law and was first introduced to American jurisprudence through statutory enactments in the mid-nineteenth century. *See Estate of Skolfield,* 121 Me. 97, 101, 115 A. 765, 767 (Me.1922). Maine's current adoption law can be traced back to its first statutory enactment in 1855. *See* P.L. 1855, ch. 189. The original statute contained the following provisions regarding who may petition to adopt:

> SECT. 1. Any inhabitant of this state may petition the judge of probate in the county wherein he or she may reside, for leave to adopt a child not his or her own by birth.

*Id.* § 1. Sections 2 and 3 of the Act addressed who must give consent for an adoption.

*Id.* §§ 2–3. Section 4 established a restriction on petitions brought by married persons:

> SECT. 4. No petition by a person having a lawful wife, shall be allowed, unless such wife shall join therein; and no petition by a person having a lawful husband shall be allowed, unless such husband shall join therein.

P.L. 1855, ch. 189, § 4. Accordingly, at its genesis, Maine's adoption statute imposed a joinder requirement on married persons, but did not impose any restrictions on petitions filed by unmarried inhabitants of the State.

[¶ 18] In 1855 the Legislature also adopted a "Resolves providing for a revision of the public laws of this state."

Resolves 1855, ch. 230 *discussed in* SAMUEL S. SILSBY, HISTORY OF STATUTORY LAW IN THE STATE OF MAINE 82 (West 1965), *reprinted in* vol. 1 M.R.S.A. 1 (1985). The resolve authorized commissioners to "faithfully ... revise, collate and arrange all the public laws of this State." *Id.* The resolve resulted in the Maine Revised Statutes, enacted in 1857. *See* THE REVISED STATUTES OF THE STATE OF MAINE, at v (1857). As it pertains to adoptions, the 1857 revision abridged the first four sections of the 1855 Act into a single section, as follows:

> SEC. 27. *Any inhabitant of this state not married, or any husband and wife jointly, may petition the judge of probate for their county, for leave to adopt a child not theirs by birth, and for a change of his name;* but a written consent must be given to such adoption by the child, if of the age of fourteen years, and by each of his living parents who is not hopelessly insane or intemperate; if there are no such parents, then by the legal guardian; if there is no such guardian, then by the next of kin in this state; if there is no such kin, then by a discreet and suitable person appointed by said judge to act in the proceedings as the next friend of such child.

R.S. ch. 59, § 27 (1857) (emphasis added). There is no evidence in the legislative record that this consolidation and simplification of the first four sections of the 1855 Act into a single section in the 1857 revision was intended to cause a substantive change.

[¶ 19] As is apparent, the language in the 1857 Act—"Any inhabitant of this state not married, or any husband and wife jointly, may petition"—is the direct antecedent of the current language in section 9–301—"A husband and wife jointly or an unmarried person, resident or nonresident of the State, may petition." The legislative

history that documents the intervening enactments that have refined the language of the 1857 Act to the current language of section 9–301 does not indicate that the refinements were intended to cause a substantive change in the law as to who may be a party to an adoption petition.[5]

[¶ 20] The legislative history establishes that the provision regarding joint petitions by husbands and wives began with the 1855 Act and was intended to restrict petitions brought by married persons. *See* P.L. 1855, ch. 189. There is nothing in the legislative history associated with the 1857 revision, or any of the subsequent legislative refinements resulting in the language that appears today in section 9–301, to suggest that the statute, in its current form, should impose a restriction on petitions by unmarried persons.

■ [¶ 21] It is nearly certain that in the mid-nineteenth century the Legislature could not have contemplated the possibility of an adoption arising from a foster care placement of children with an unmarried couple as the result of a child protection proceeding. The specific question, however, is not whether the Legislature

entertained this possibility, but rather, whether the Legislature intended by its enactment to define "all possible categories of persons leading to adoptions in the best interests of children." *Adoption of Tammy*, 619 N.E.2d at 319; *see also In re Jacob*, 636 N.Y.S.2d 716, 660 N.E.2d at 405; *Adoption of B.L.V.B.*, 160 Vt. 368, 628 A.2d 1271, 1274 (1993). Our answer to this question must adhere to the principle that "[s]tatutes framed in general terms apply to new cases that arise and to new subjects that are created, from time to time, and which come within their general scope and policy." *Appeal of Cummings*, 126 Me. 111, 114, 136 A. 662, 664 (1927) (citation omitted); *see also* 2B SUTHERLAND STATUTORY CONSTRUCTION § 49.02 (6th ed.2000) (collecting cases).

[¶ 22] Although the historical record is not definitive, it does not establish that section 9–301 is intended to impose a restriction that would bar a joint petition by unmarried persons.

## C. Purpose of Adoption Law

■ [¶ 23] When we find a statute ambiguous, we may also look to the statute's

5. The Legislature made no relevant amendments to the adoption statute between 1857 and 1914. R.S. ch. 67, § 28 (1871); R.S. ch. 67, § 32 (1884); R.S. ch. 69, § 32 (1904). In 1915, the Legislature expanded the class of persons who could adopt to include persons that were citizens of other states. P.L.1915, ch. 292. Between 1915 and 1969 the Legislature made no relevant changes pertaining to the class of persons that could adopt children. P.L.1921, ch. 124; P.L.1923, ch. 184; P.L. 1939, ch. 33; P.L.1945, ch. 68; R.S. ch. 158, § 36 (1954); 19 M.R.S.A. § 531 (1964); P.L. 1967, ch. 432; P.L.1969, ch. 294; P.L.1969, ch. 328; P.L.1969, ch. 433, § 35. In 1969, the Legislature repealed and replaced the statute dealing with adoptions and, among other changes, adopted the precise language currently found in section 9–301: "Any husband and wife jointly, or any unmarried person, resident or non-resident of the State of Maine, may petition . . . ." P.L.1969, ch. 539.

The 1969 legislation was captioned "AN ACT Relating to Jurisdiction of Probate Courts in Adoption Cases" and it enacted changes as to the county in which adoption petitions could be brought. L.D. 1663 (104th Legis.1970); Comm. Amend. A to L.D. 1663, No. H.P. 1334 (104th Legis.1970). There is no evidence in the legislative record that the Legislature also intended to effect a substantive change in the law as to who may petition to adopt. *See id.* The Legislature thereafter made no relevant changes to the adoption statute until 1995. *See* P.L.1971, ch. 598, § 31; P.L.1973, ch. 451, § 6; P.L.1979, ch. 733, §§ 7–8; 9 M.R.S.A. § 531 (1981); P.L. 1983, ch. 262, § 3; P.L.1987, ch. 102; P.L. 1995, ch. 694, § C–7; P.L.1997, ch. 18, § 3; P.L.2001, ch. 52, § 1; P.L.2005, ch. 654, § 4. In 1995, the adoption statute was recodified into Title 18–A and became part of the Probate Code. P.L.1995, ch. 694, § C–7.

underlying purpose to ascertain legislative intent. *In re Wage Payment Litig.*, 2000 ME 162, ¶ 4, 759 A.2d 217, 220–21. As a prelude to construing the purpose of section 9–301, we first address the role that purpose should play in our construction of the statute.

■ [¶ 24] Although statutes adopted in derogation of the common law are to be strictly construed, we have previously recognized that "[w]e construe our adoption statutes to protect the rights and privileges of the child being adopted." *Dep't of Human Servs. v. Sabattus*, 683 A.2d 170, 172 (Me.1996).[6] This is consistent with the central role the best interests of the children play in the statutory factors the court is required to consider in evaluating an adoption petition. *See* 18–A M.R.S. § 9–308(a)(5), (b)(1)-(3) (2006). Accordingly, it is established in our jurisprudence that:

> Adoption statutes, as well as matters of procedure leading up to adoption, should

be liberally construed to carry out the beneficent purposes of the adoption institution and to protect the adopted child in the rights and privileges coming to it as a result of the adoption.

*In re Estate of Goodwin*, 147 Me. 237, 244, 86 A.2d 88, 91 (1952) (quotation marks omitted).

[¶ 25] This construction also comports with the Probate Code's general rule of statutory construction: "This Code shall be liberally construed and applied to promote its underlying purposes and policies." 18–A M.R.S. § 1–102(a) (2006). The first stated purpose of the Probate Code is "to simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, *minors* and incapacitated persons." *Id.* § 1–102(b)(1) (2006) (emphasis added). We applied the Code's liberal rule of construction in *Guardianship of Zachary Z.* so as to interpret the term "residence" broadly to include, as resi-

---

**6.** Many other courts have likewise rejected the application of strict construction to adoption statutes, favoring instead a broader construction that promotes the best interests of the child. *See, e.g., In re M.M.D.*, 662 A.2d 837, 845 n. 4, 853–54 (D.C.1995) (collecting cases); *S.O. v. W.S.*, 643 P.2d 997, 1002 n. 7 (Alaska 1982) ("the better rule is to construe adoption statutes in a manner that will promote [the welfare of the child]"), *overruled on other grounds by Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478 (Alaska 1984); *San Diego County Dep't of Public Welfare v. Sup.Ct. of San Diego County*, 7 Cal.3d 1, 101 Cal.Rptr. 541, 496 P.2d 453, 463 (1972) (adoption statute "is to be given a liberal construction with a view to effect its objects and to promote justice" (quotation marks omitted)); *Stjernholm v. Mazaheri*, 180 Colo. 352, 506 P.2d 155, 157 (1973) (adoption statutes "are given a liberal construction"); *Herrin v. Graham*, 87 Ga.App. 291, 73 S.E.2d 572, 573 (1952) (recognizing that "[t]he modern tendency is to give adoption statutes a liberal construction in order to effect their benevolent purposes and to promote the welfare of the child sought to be adopted"), *overruled on other grounds by Davey v. Evans*, 156

Ga.App. 698, 275 S.E.2d 769, 770 (1980); *In re K.M.*, 274 Ill.App.3d 189, 210 Ill.Dec. 693, 653 N.E.2d 888, 896 (1995) ("Liberal construction, focused on the best interests of the children, is what the [adoption] statute calls for . . . ."); *In re Adoption of Thomas*, 431 N.E.2d 506, 512 (Ind.Ct.App.1982) ("The adoption statute is not to be so strictly construed as to defeat its purposes."); *In re Neil's Estate*, 187 Neb. 364, 191 N.W.2d 448, 450 (1971) ("Since 1897, Nebraska has been in the vanguard of those states applying a liberal rather than a strict construction to adoption statutes."); *In re Adoption of Michelle N.*, 577 P.2d 68, 72 (Okla.1978) ("[A]doption statutes are generally given a liberal construction") (quotation marks omitted); *Homfeld v. Pence*, 487 S.W.2d 224, 227 (Tex.Civ.App.1972) ("[A]doption statutes are to be liberally construed in favor of the minors in order to effectuate their beneficial purpose"); *Adoption of B.L.V.B.*, 160 Vt. 368, 628 A.2d 1271, 1274 (1993) (noting that "[a]lthough the precise circumstances of these adoptions may not have been contemplated during the initial drafting of the [adoption] statute, the general intent and spirit of [the statute] is entirely consistent with them").

dents of Maine, children who formerly, but no longer, lived in Maine. 677 A.2d 550, 552–53 (Me.1996). We reasoned that "[s]uch liberal construction allows the Probate Court to protect children who are removed from their Maine homes for the duration of guardianship proceedings by persons seeking to avoid a Maine forum." *Id.* at 553. We also observed that a liberal construction of the statute better comports "with the purposes of the Probate Code, which subscribe generally to judicial efficiency and simplification of process." *Id.*

[¶ 26] The construction of section 9–301 that will most promote the rights and privileges of children such as M.A., R.A., and other similarly situated children, and will simplify and clarify the law of adoption, is one that does not infer a procedural bar that would disqualify the joint petitions filed by A.C. and M.K. In contrast to a narrow reading of section 9–301 that infers a restriction not expressed in the statute, a broader construction is more in keeping with the statute's overriding objective of protecting the welfare of children. A joint adoption assures that in the event of either adoptive parent's death, the children's continued relationship with the surviving adoptive parent is fixed and certain. A joint adoption also enables the children to be eligible for a variety of public and private benefits, including Social Security, worker's compensation, and intestate succession, as well as employment benefits such as health insurance and family leave, on account of not one, but two legally recognized parents. Most importantly, a joint adoption affords the adopted children the love, nurturing, and support of not one, but two parents.

[¶ 27] In addition, a construction of section 9–301 that allows a joint petition will enable the Probate Court to conduct a single proceeding in which it can evaluate the statutory best interest criteria as applied to M.A. and R.A. relative to their relationships to both A.C. and M.K. A joint petition will permit the court to evaluate, among other things, "[t]he love, affection and other emotional ties existing between the adoptee and the adopting ... persons," 18–A M.R.S. § 9–308(b)(1), from the perspective of the established family unit that has emerged since the children went into the Department's custody in 2001. A single joint petition makes it unnecessary for the parties to proceed by way of separate, consolidated or consecutive adoption petitions, with the added costs and delay that arise from a more convoluted process. A single joint petition best comports "with the purposes of the Probate Code, which subscribe generally to judicial efficiency and simplification of process." *Guardianship of Zachary Z.,* 677 A.2d at 553.

[¶ 28] There is also a broader, systemic reason for opting in favor of a construction of section 9–301 that permits the joint petitions filed in this case. The Probate Code requires the court to evaluate the best interest factors in order "to give the adoptee a *permanent home* at the earliest possible date." 18–A M.R.S. § 9–308(b) (emphasis added). As we recognized in *In re Thomas H.,* "[p]ermanency planning was embraced by Congress in the Adoption and Safe Families Act of 1997 (ASFA) in direct response to the documented inability of state child welfare systems to bring about stable and final outcomes for children within a timeframe reasonably designed to meet their needs." 2005 ME 123, ¶ 23, 889 A.2d 297, 304 (citation omitted). We described permanency as "a central tenet of ASFA and the corresponding amendments to Maine['s] child protective laws," noting that our Legislature had declared "instability and impermanency [as] contrary to the welfare of children." *Id.* ¶ 24, 889 A.2d at 304 (quotation marks omitted). We concluded that because of "the strong public policy favoring permanency for children [that] must inform the trial court's exercise of judicial discretion

associated with determining a child's best interest," a disposition that will result in a child remaining in long-term foster care can only be sustained if there is a compelling reason for it. *Id.* ¶¶ 29–30, 889 A.2d at 307.

[¶ 29] This adoption proceeding is the final phase of a continuum of a legal process that began in 2001 when M.A. and R.A. first came into the Department's custody and were placed in the joint care of A.C. and M.K.[7] The construction of section 9–301 that permits the Probate Court to consider a single joint petition to adopt advances the strong public policy favoring permanency at the earliest possible date as applied to children, such as M.A. and R.A., who have been in a long-term, pre-adoptive foster care placement for most of their lives.

[¶ 30] The question of statutory construction presented by this case does not arise in a vacuum. We cannot be oblivious to the fact that if the statute is construed to permit the Probate Court to consider a joint adoption petition by unmarried persons, there will be a greater incentive for other unmarried persons to undertake the profound and difficult responsibility of serving as pre-adoptive foster parents for young children with significant special needs. Absent the incentive that the possibility of joint adoption provides, there will be fewer homes for such children.

■ [¶ 31] Viewing the petitions and the supporting reports and documents in the light most favorable to the petitioners, it is clear that a construction of section 9–301 that imposes a procedural bar that would further complicate and delay, or even prohibit, the court from considering a joint adoption petition is inimical to the children's interests and bears no connection to the child welfare goals of our adoption and child protection statutes. When faced with competing constructions of a statute, we choose the construction "that avoids a result adverse to the public interest." *See S. Portland Civil Serv. Comm'n v. City of S. Portland,* 667 A.2d 599, 601 (Me.1995). We conclude that section 9–301 does not prohibit a joint adoption petition by two unmarried persons.

The entry is:

Judgment vacated and remanded to the Probate Court for further proceedings consistent with this opinion.

---

7. *See In re Adoption of Michaela C.,* 2004 ME 153, ¶ 3, 863 A.2d 270, 272 (recognizing the interrelationship of child protection and adoption proceedings).