MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:      2017 ME 131
Docket:        Cum-16-421
Submitted
  On Briefs:   May 25, 2017
Decided:       June 27, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CAROL A. BOARDMAN

PER CURIAM

[¶1]   Carol A. Boardman appeals from a decision of the Cumberland County Probate Court (*Mazziotti, J.*) denying her petition for a name change entered after a hearing.   Boardman contends that the court erred by concluding that the potential effect of the name change—others' misunderstanding of Boardman's marital status—does not demonstrate a purpose "of defrauding another person or entity" that supports the court's denial of the petition.[1]   18-A M.R.S. ¶ 1-701(f) (2015).[2]   We agree with Boardman, and we therefore vacate the judgment.

---

[1] We also received two briefs of amicus curiae in this matter—one from Kimberly A. Fredette, a similarly situated litigant, and one from the GLBTQ Legal Advocates & Defenders, the ALCU of Maine, EqualityMaine, and the Trans Youth Equality Foundation.  *See* M.R. App. P. 9(e).

[2] Section 1-701 has since been amended.  P.L. 2015, ch. 460, § 5 (effective July 29, 2016); *see infra* n.3.

## I.  BACKGROUND

[¶2]  On June 17, 2016, Carol A. Boardman filed in the Cumberland County Probate Court an unopposed petition and affidavit seeking to change her name to Carol A. Currier.  In her accompanying affidavit, Boardman attested to four facts as follows: (1) "I certify that I have notified . . . [a]ny adult person who is a relative or with whom I live or work or who is a blood relative of a person with whom I live who has the same name which I am seeking to adopt"; (2) "I have no minor children"; (3) "I am not involved in any bankruptcy proceedings or arrangements among creditors in which my debts to others are being affected, nor do I reasonably anticipate that such proceedings or arrangements are about to begin"; and (4) "I know of no person who has or has reason to have any objection to the change of name I am seeking."

[¶3]  The court conducted a hearing on the petition on August 18, 2016, during which it inquired as to whether Currier was Boardman's "maiden" name.  Boardman responded that Currier was not her original family name, but was instead the last name of her friend, and that her husband had died in 2013 and she wanted a "fresh start."  The court informed Boardman that to allow her to take her friend's last name would be a "deception" in that it

would falsely suggest to others that she and her friend are married. The court explained, "So, if somebody were to extend credit to you, let you sign a lease, give you access to records, they would do so under the misapprehension that you were a married couple, but you're not." When Boardman asked, "What am I supposed to do?" the court replied, "Get married. That's your solution, I'm afraid." The court denied the petition, concluding, "Boardman seeks to change her name to the surname of her partner. She admits that by doing so will give the public impression they are a married couple and thus a false impression." Boardman appeals. *See* 18-A M.R.S. § 1-308 (2016); M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶4] At the time Boardman filed her petition, the name change statute in effect was 18-A M.R.S. § 1-701 (2015).[3] Section 1-701 provides that a court

---

[3] The applicable version of the name change statute provided in its entirety is as follows:

**§ 1-701. Petition to change name**

    **(a)** If a person desires to have that person's name changed, the person may petition the judge of probate in the county where the person resides. If the person is a minor, the person's legal custodian may petition in the person's behalf.

    **(b)** The judge, after due notice, may change the name of the person. To protect the person's safety, the judge may limit the notice required if the person shows by a preponderance of the evidence that:

        **(1)** The person is a victim of abuse; and

        **(2)** The person is currently in reasonable fear of the person's safety.

4

may grant a name change when a "person [who] desires to have that person's name changed" files a petition in the county in which she resides and provides "due notice" of the request along with a forty-dollar fee.  1 M.R.S. § 1-701(a), (b), (d).   The court may also order the petitioner to undergo background checks to verify criminal history, motor vehicle history, and credit history. 1 M.R.S. § 1-701(e).  Section 1-701 further names the limited circumstances in which a name change may not be granted: "The judge may not change the name of the person if the judge has reason to believe that the person is seeking the name change for purposes of defrauding another person or entity or for purposes otherwise contrary to the public interest."  1 M.R.S. § 1-701(f).

---

(c) The judge shall make and preserve a record of the name change.  If the judge limited the notice required under subsection (b), the judge may seal the records of the name change.

(d) The fee for filing the name change petition is $40.

(e) The judge may require the person seeking a name change to undergo one or more of the following background checks: a criminal history record check; a motor vehicle record check; or a credit check.  The judge may require the person to pay the cost of each background check required.

(f) The judge may not change the name of the person if the judge has reason to believe that the person is seeking the name change for purposes of defrauding another person or entity or for purposes otherwise contrary to the public interest.

18-A M.R.S. § 1-701 (2015).  The 2015 amendment to the statute gives the District Court jurisdiction over a name change for a minor when "there is a proceeding involving custody or other parental rights with respect to [a] minor pending in the District Court."  P.L. 2015, ch. 460, § 5 (effective July 29, 2016) (codified at 18-A M.R.S. § 1-701(a) (2016)).  That amendment is not relevant to the current appeal.

[¶5]  Here, the record establishes, and there is no dispute, that Boardman filed a petition in the Probate Court of the county in which she resides, *see* 18-A M.R.S. § 1-701(a); Boardman is not a minor, *see* 18-A M.R.S. § 1-701(a); no parental rights dispute regarding a minor was pending, *see* 18-A M.R.S. § 1-701(a); "due notice" of the petition was provided, *see* 18-A M.R.S. § 1-701(b); Boardman paid the required fee with her petition, *see* 18-A M.R.S. § 1-701(d); and the court did not require Boardman to submit to any background checks, *see* 18-A M.R.S. § 1-701(e).  *See In re A.M.B.*, 2010 ME 54, ¶¶ 2, 3, 5, 997 A.2d 754.  No one appeared before the Probate Court to oppose her petition.

[¶6]  The Probate Court determined, however, that granting her the requested name change might mislead others to believe that she is married to a man who has the same last name she wishes to adopt.  This misunderstanding, the court apparently concluded, constitutes the type of fraud that precludes the grant of a name change pursuant to section 1-701(f).

[¶7]  Boardman challenges this interpretation of the name change statute as a matter of law.  Although we generally review for an abuse of discretion the court's denial of a requested name change, *In re A.M.B.*, 2010 ME 54, ¶ 4, 997 A.2d 754, because this matter regards the court's legal

6

interpretation of section 1-701, we review de novo the meaning of the statute by examining its plain and unambiguous language, *see Estate of Gray*, 2014 ME 119, ¶ 9, 103 A.3d 212; *Adoption of M.A.*, 2007 ME 123, ¶¶ 6, 9, 930 A.2d 1088.

[¶8] Name changes are to be liberally granted. *See* 18-A M.R.S. § 1-102 (2016) (stating that the Probate Code, of which section 1-701 is a part, "shall be liberally construed and applied to promote its underlying purposes and policies"); *Adoption of M.A.*, 2007 ME 123, ¶ 25, 930 A.2d 1088. By identifying those limited instances in which "[t]he judge may not change the name of the person," section 1-701 suggests that a name change must be granted in all other circumstances. The statute provides only two bases for denying a requested name change—when it is sought "for purposes of defrauding another person or entity" or when it is sought "for purposes otherwise contrary to the public interest." 18-A M.R.S. § 1-701(f). As we have said, "[t]he main purpose of the statute . . . is to provide petitioners with the certainty of a judicially-sanctioned name change, as long as the petition is not submitted with fraudulent intent and the change of name does not interfere with the rights of others." *In re A.M.B.*, 2010 ME 54, ¶ 4, 997 A.2d 754.

[¶9] Although section 1-701 does not define what it means to "defraud[]," that term is a legal term of art that has long referred to a

"depriv[ation] of some right, interest or property by a deceitful device." *State v. Vandenburg*, 2 A.2d 916, 919 (Del. Gen. Sess. Ct. 1938) (quotation marks omitted); *see Motley v. Sawyer*, 38 Me. 68, 73 (1854); *Moody v. Burton*, 27 Me. 427, 436 (1847); Webster's Third New International Dictionary 593 (2002). In the civil context, for example, the tort of fraudulent misrepresentation is proved with evidence

> (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage.

*Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771. Similarly, the elements of fraudulent concealment are "(1) a failure to disclose; (2) a material fact; (3) where a legal or equitable duty to disclose exists; (4) with the intention of inducing another to act or to refrain from acting in reliance on the non-disclosure; and (5) which is in fact relied upon to the aggrieved party's detriment." *Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67, ¶ 30, 974 A.2d 286. In terms of negotiable instruments as well, a "[f]raudulent indorsement" is one in which an instrument is forged. 11 M.R.S. § 3-1405(1)(b) (2016).

8

[¶10]    Similarly, in the criminal context, "[a] person is guilty of defrauding a creditor if . . . [t]he person destroys, removes, conceals, encumbers, transfers or otherwise deals with property subject to a security interest . . . with the intent to hinder enforcement of that interest."  17-A M.R.S. § 902(1), (1)(A) (2016).  Home repair fraud is committed by "[i]ntentionally misrepresent[ing] a material fact relating to the terms of the agreement or contract or misrepresent[ing] a preexisting or existing condition of any portion of the property that is the subject of the home repair services." 17-A M.R.S. § 908(1)(A) (2016).

[¶11]  We interpret the plain language of "defraud[]" in section 1-701 consistently with these definitions.  Although the court expressed concern that Boardman's name change could lead potential creditors, lessors, or record holders to believe that she is married, unless and until there is some evidence that Boardman has taken or intends to take some action to avoid financial or legal obligations, or to represent that she is married in circumstances that cause another to justifiably rely on that representation to his or her detriment, no fraud is implicated.  *See In re McIntyre*, 715 A.2d 400, 402 (Pa. 1998) (stating that the "necessity for judicial involvement in name change petition centers on governmental concerns that individuals not alter

their identity to avoid financial obligations"). The record in this matter is devoid of any such evidence.

[¶12] The Probate Court's reading of section 1-701 also creates absurd results that do not comport with other provisions of Maine law. *See Curtis v. Medeiros*, 2016 ME 180, ¶ 10, 152 A.3d 605 (stating that courts must avoid any interpretation of plain language that creates absurd results). The Maine Human Rights Act, 5 M.R.S. §§ 4551-4634 (2016), already precludes discrimination based on marital status, including in the provision of credit and in the provision of housing. 5 M.R.S. §§ 4552, 4595-4596. Moreover, unmarried domestic partners are already afforded various legal benefits, regardless of their names. *See* 22 M.R.S. § 2710 (2016) (establishing the domestic partner registry); *see also* 15 M.R.S. § 321(1) (2016) (including domestic partners within the definition of "family or household members" for protective order purposes); 18-A M.R.S. § 2-102 (2016) (allowing domestic partners to inherit under the laws of intestacy); 24-A M.R.S. § 2741-A (2016) (requiring that health insurers make coverage available for domestic partners). Thus, by law, it cannot be marital status that dictates the availability of credit or leasing options—the transactions about which the Probate Court expressed concern.

[¶13]  Moreover, as a practical matter, given the variety of naming conventions in modern society, having the same last name no more indicates that a couple is married than having a different last name indicates that a couple is unmarried.  Indeed, more than forty years ago, we struck down this concomitant notion in holding that a name change may not be denied on the ground that it misleads others to believe that a person is unmarried when that person is in fact married.  In *In re Reben*, a woman took her husband's last name when the couple married but she later filed a petition to return to her birth name even though she and her husband had no plans to divorce.  342 A.2d 688, 688-89 (Me. 1975).  The Probate Court denied her petition.  *Id.* at 689.  Because, as here, there was no evidence in *In re Reben* that the petitioner had any fraudulent intent in seeking the name change, we declared the court's denial of the name change petition an abuse of discretion.[4]  *Id.* at 689, 695.

---

[4] Other jurisdictions have reached similar conclusions in a variety of circumstances.  *See, e.g.*, *In re Miller*, 824 A.2d 1207, 1208, 1211-14 (Pa. Super. Ct. 2003) (holding that a woman was not precluded from adopting the last name of her "life companion"); *In re Bicknell*, 771 N.E.2d 846, 847-49 (Ohio 2002) (holding that an unmarried same-sex couple wishing to adopt the same last name is not a fraudulent basis on which to deny a requested name change); *see also In re Bacharach*, 780 A.2d 579, 585 (N.J. Super. Ct. App. Div. 2001) (same); *In re McIntyre*, 715 A.2d 400, 401-03 (Pa. 1998) (requiring the trial court to grant a name change from a male to a female name in anticipation of the petitioner's sex-reassignment surgery and holding that any confusion about the petitioner's gender created among others as a result of the name change did not constitute the financial fraud with which the name change statute was primarily concerned); *In re Brown*, 770 S.E.2d 494, 495, 497-98 (Va. 2015) (requiring the trial court to grant the name change petition of a federal prison inmate with gender identity disorder in the absence of any evidence of fraud).

[¶14]     On this appeal, we conclude that a person's potential misunderstanding of another person's marital status, without more, does not qualify as a fraud that precludes the otherwise liberal grant of name change petitions in the Probate Court.  Given this conclusion, and in the absence of any dispute that Boardman met all the requirements for the change of her last name imposed by section 1-701, we vacate the court's denial of Boardman's petition and remand the matter with instructions to enter a judgment granting Boardman's petition for a name change.

The entry is:

> Judgment vacated.  Remanded with instructions
> to enter a judgment granting Boardman's name
> change petition.

---

James S. Mundy, Esq., Whitney, Mundy & Mundy, South Berwick, for appellant Carol Ann Boardman

Kimberly Ann Fredette, amicus curiae pro se

Mary L. Bonauto, Esq., and Patience Crozier, Esq., GLBTQ Legal Advocates & Defenders, Boston, for amici curiae GLBTQ Legal Advocates & Defenders, ACLU of Maine Foundation, EqualityMaine, and Trans Youth Equality Foundation

Cumberland County Probate Court docket number 2016-868
FOR CLERK REFERENCE ONLY